**IT IS ORDERED as set forth below:**



Date: August 23, 2023

_____
Wendy L. Hagenau
U.S. Bankruptcy Court Judge

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-65475-WLH |
| EMMANUEL OHAI, | CHAPTER 7 |
| Debtor. | |
| EMMANUEL OHAI, | ADVERSARY PROCEEDING NO. 23-5041-WLH |
| Plaintiff, | |
| v. | |
| DELTA COMMUNITY CREDIT UNION, PNC BANK NATIONAL ASSOCIATION, INC., DEAN ENGLE & PARK TREE INVESTMENTS, LLC, PARK TREE 20 INVESTMENTS, LLC, FCI LENDER SERVICES, INC., DANIEL I. SINGER & SINGER LAW GROUP, PHILLIP L. JAUREGUI D/B/A JAUREGUI & LINDSAY LLC, MICHAEL W. LINDSEY D/B/A, JAUREGUI & LINDSEY, LLC, MICROBILT CORPORATION, | |
| Defendants. | |

**ORDER DENYING PNC BANK, N.A.'S MOTION TO DISMISS**

1

Plaintiff initiated this adversary proceeding by filing a complaint on March 29, 2023 alleging PNC Bank, N.A. ("PNC") violated the automatic stay and discharge injunction. This matter is before the Court on the Motion to Dismiss filed by PNC (Doc. No. 12), Plaintiff's Response (Doc. No. 14), and PNC's Reply in Further Support of its Motion to Dismiss (Doc. No. 19).[1]

## I.     FACTS

On April 25, 2008, Plaintiff purchased an investment property at 3102 Stone Mountain Street, Lithonia, Georgia ("Lithonia Property"). RBC was the mortgage lender. Plaintiff fell behind on the payments, and RBC foreclosed on May 4, 2010. RBC was the highest bidder at the non-judicial foreclosure sale. PNC succeeded to RBC's rights and obligations as a result of a merger announced in 2011 and completed in 2012. RBC filed a complaint in Superior Court on March 31, 2011 seeking to set aside the foreclosure due to the condition of the Lithonia Property. After Plaintiff's answer, RBC dismissed the complaint in May 2011.

Thereafter, on June 20, 2012, Plaintiff and his now ex-wife filed a petition under Chapter 7 of the Bankruptcy Code. RBC was listed on Schedule F as a creditor holding an unsecured nonpriority claim in an "unknown amount based on a mortgage foreclosure in or about 2009." The Chapter 7 Trustee, Janet G. Watts, conducted the 341 meeting of creditors on July 17, 2012, and filed a Report of No Distribution on August 16, 2012. The bankruptcy case was closed and discharged on October 5, 2012 (Bankr. Doc. No. 14).[2]

On March 29, 2023, Plaintiff filed the complaint against PNC, other mortgage holders, other debt collectors, and a consumer reporting agency. The complaint relates to two separate

---

[1] Plaintiff filed a Motion for Leave to File a Short Sur-Reply (Doc. No. 23), which the Court denied (Doc. No. 25).
[2] While reopening is not required, the Court nevertheless entered an order on July 14, 2023 reopening the bankruptcy case.

properties, but the actions of PNC only relate to the Lithonia Property. Plaintiff alleges PNC violated both the automatic stay and the discharge injunction. Plaintiff alleges PNC violated the automatic stay by filing an action in the DeKalb County courts to rescind the foreclosure sale of the Lithonia Property on March 31, 2011, and by continuing collection efforts while his bankruptcy case was pending. Plaintiff also alleges PNC violated the discharge injunction by attempting to collect on the foreclosed and discharged debt. First, Plaintiff alleges PNC sent him loan account statements during 2018-2020, years after the foreclosure, that included a total payment amount due (see Ex S, T, X). Second, Plaintiff alleges PNC provided a 1099C tax document to the Internal Revenue Service in 2021 (Ex U). Third, Plaintiff alleges he sent PNC a cease-and-desist letter in September 2018 and PNC responded with confusing letters claiming Plaintiff was personally liable for the debt that had been foreclosed upon in 2010 (Ex V) (stating PNC's "lien against your Property will remain and you remain obligated to pay PNC Bank the full outstanding balance of your account."). Plaintiff contends PNC's communications were sent years after the foreclosure and related to a debt for which Plaintiff no longer had any in rem or in personam obligations.

## II. LAW

### a. Dismissal for lack of subject matter jurisdiction

PNC contends dismissal is appropriate because the Court lacks subject matter jurisdiction over this proceeding. Fed. R. Civ. P. 12(b)(1). PNC relies on the closing of the bankruptcy case in 2012 and orders of the District Court in its argument, but neither supports the Motion to Dismiss.

Bankruptcy court jurisdiction is codified in 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. Pursuant to 28 U.S.C. § 1334, "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The bankruptcy court's jurisdiction is derivative of and dependent upon these

3

bases. Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1344 (11th Cir. 1999) (citing Celotex Corp. v. Edwards, 514 U.S. 300 (1995)). Pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), this Court may exercise jurisdiction in three categories of civil proceedings: those that arise under title 11, those that arise in cases under title 11, and those that relate to cases under title 11. Toledo, 170 F.3d at 1344.

The first category of cases, "arising under" proceedings, are matters invoking a substantive right created by the Bankruptcy Code. Id. at 1345. Such matters are considered core proceedings. Id. at 1348 (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).

The second category, "arising in a case under title 11," involves matters that could arise only in bankruptcy. "Arising under" jurisdiction involves "a substantive right created by the Bankruptcy Code," while "arising in" jurisdiction pertains to claims that are "not based on any right expressly created by title 11, but nevertheless could have no existence outside of bankruptcy". Grausz v Englander, 321 F 3d 467, 471 (4th Cir. 2002). Typically, the facts giving rise to a claim "arising in" a bankruptcy case occur during the course of the bankruptcy case. See Mercer v Allen, 2014 WL 185252 (M.D. Ga. Jan 15, 2014); In re Taylor, 2006 WL 6591616 (Bankr. N.D. Ga. May 4, 2006). These matters also typically constitute core proceedings.

The third category of cases involves matters relating to a case under title 11. This group includes matters that "could have a material effect on the administration of the case or claims against the bankruptcy estate, but such a claim could exist outside of bankruptcy." See Customized Distrib., LLC v. Coastal Bank & Tr. (In re Lee's Famous Recipes, Inc.), 2011 WL 7068916, at *3 (Bankr. N.D. Ga. Dec. 12, 2011) (citing Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.), 387 B.R. 95, 104 (Bankr. D. Del. 2008)). A civil proceeding is related to a bankruptcy case if "the outcome of the proceeding could conceivably have an effect on the estate

4

being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); Celotex, 514 U.S. at 308.

The plaintiff has the burden of proving the Court's subject matter jurisdiction by a preponderance of the evidence. Walden v. Walker, 515 F.3d 1204, 1210 (11th Cir. 2008) (internal citations omitted). Bankruptcy courts have jurisdiction to hear section 362(k) claims because they are "core" proceedings within section 1334(b)'s "arising under" jurisdiction. Johnson, 575 F.3d at 1083. Likewise, a debtor's claim to enforce the discharge injunction is a core proceeding "arising under" the Bankruptcy Code. In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009). As other courts have observed, "there [are] few matters as 'core' to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code." In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (citation omitted).

It is not necessary for the underlying bankruptcy case to be open for bankruptcy courts to exercise section 1334(b) jurisdiction. In re Aheong, 276 B.R. 233, 242-46 (B.A.P. 9th Cir. 2002). Thus, the closing of a case does not strip the Court of jurisdiction and reopening is not required to consider such claims. See Justice Cometh, Ltd. v. Lambert, 426 F.3d 1342, 1343 (11th Cir. 2005); see also In re Stanwyck, 450 B.R. 181, 193 (Bankr. C.D. Cal. 2011) (rejecting "Defendants' assertion that [plaintiff] was required to reopen his prior bankruptcy cases to assert [Section] 362(k) claims"). While reopening is not required, the Court nevertheless entered an order on July 14, 2023 reopening the bankruptcy case, thus mooting the argument about whether the Court lacks jurisdiction in absence of reopening.

Further, a bankruptcy court necessarily has power to enforce its own orders regarding its administration of the estate. Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 969 (11th Cir. 2012) (citing Local Loan Co., 292 U.S. at 241). "[T]he court that enters an injunctive order retains

jurisdiction to enforce its order. In this respect, a bankruptcy court is no different than any other federal court, which possesses the inherent power to sanction contempt of its orders." Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 970 (11th Cir. 2012) (citations omitted); see also Thomas v. General Motors Corp., 522 U.S. 222, 236 (1998) (there can be no doubt that the court that issues an injunction has the authority to enforce it: "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction."). In the bankruptcy context, "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge." Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 966 (11th Cir. 2012) (citing Cox v. Zale Del., Inc., 239 F.3d 910, 915 (7th Cir.2001)).

Bankruptcy courts also have power to sanction under their statutory civil contempt authority under section 105(a) of the Bankruptcy Code. In re BCB Contracting Servs., LLC, 2022 WL 1198232, at *5 (B.A.P. 9th Cir. Apr. 21, 2022), aff'd, 2022 WL 17844674 (9th Cir. Dec. 22, 2022). Pursuant to section 105(a), a bankruptcy court has statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provision of the Code." Law v. Siegel, 571 U.S. 415, 420-21 (2014) (citing 11 U.S.C. § 105(a)). "Civil contempt authority [pursuant to section 105(a)] allows a court to remedy a violation of a specific order." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196 (9th Cir. 2003). Thus, a court may impose sanctions if a party violates a court order, including an order of discharge. See Golden, 630 B.R. at 919.

In its Motion, PNC relies on cases discussing when a pending adversary proceeding should be dismissed because the bankruptcy case has been dismissed or closed. These cases reason that the adversary proceeding should be dismissed because there was no nexus or relationship between the adversary proceeding and the bankruptcy case. That can certainly be true (for example, an

adversary proceeding about property abandoned by a trustee or about dischargeability in a dismissed case). But it is not always true, and it is not the case here. Here, Plaintiff's claims against PNC in this adversary proceeding implicate rights that exist solely because Plaintiff filed bankruptcy and obtained a discharge in bankruptcy. The automatic stay and discharge are fundamental and core to the bankruptcy case. Such proceedings are core proceedings "arising under" the Bankruptcy Code, irrespective of whether the case is reopened, and the Court does not lose jurisdiction to determine those issues just because the case is closed. Aheong, 276 B.R. at 242-46; Justice Cometh, Ltd., 426 F.3d at 1343. In any event, the case has been reopened. Moreover, PNC's statement that these bankruptcy issues are not related to Plaintiff's Chapter 7 case and do not require bankruptcy expertise simply has no basis in fact or law. It is axiomatic that this Court has subject matter jurisdiction to consider such core matters. See Golden, 630 B.R. at 920.

### b. District Court Orders

PNC also contends dismissal is appropriate because Plaintiff filed a complaint in District Court alleging nearly identical claims, which the District Court dismissed. PNC improperly characterizes the orders and the claims adjudicated in the District Court matter.

On May 26, 2020, Plaintiff filed a complaint in the United States District Court for the Northern District of Georgia, *Ohai v. Delta Community Credit Union et al* Civil Action No. 1:20-cv-02220-SCJ-JEM against PNC and others. Plaintiff alleged violations of several consumer protection statutes (the Fair Credit Reporting Act ("FCRA"), Equal Credit Opportunity Act ("ECOA"), Fair Debt Collection Practices Act ("FDCPA"), Georgia Fair Business Practices Act ("GFBPA")), invasion of privacy, and "defamation—libel". The original complaint did not allege a violation of the automatic stay or discharge injunction. Plaintiff filed an amended complaint

7

(District Court Doc. No. 11) on June 15, 2020. It included claims that PNC violated the FDCPA, FCRA, the GFBPA, and the discharge injunction. The Amended Complaint did not include any claims regarding the automatic stay. Plaintiff sought to further amend his complaint and filed a Motion for Leave to File the Second Amended Complaint (District Court Doc. No. 108). The court ultimately denied Plaintiff's request to amend the complaint (District Court Doc. No. 149), but the court granted the motion "to the extent that Plaintiff seeks to dismiss his claim for a bankruptcy discharge injunction." Accordingly, the court ruled the First Amended Complaint (District Court Doc. No. 11)—without claim XI regarding the discharge injunction—was the operative complaint (District Court Doc. No. 149 at 45-46.) At this point, then, neither the automatic stay nor the discharge injunction were at issue in the District Court.

Meanwhile, Plaintiff filed an emergency motion to stop an April 6, 2021 foreclosure (District Court Doc. No. 125), which the District Court denied (District Court Doc. No. 134). In denying injunctive relief, the District Court noted that a claim regarding the discharge injunction must be brought in the court having jurisdiction of the underlying bankruptcy action: "the court whose order has been defied must entertain the contempt action, and the bankruptcy court that issued the discharge injunction is the proper forum for this dispute." Id. (citations omitted) [WL cite: Ohai v. Delta Cmty. Credit Union, 2021 WL 2678663, at *4 (N.D. Ga. Apr. 5, 2021)].

PNC then sought to dismiss the District Court complaint, which at this point only alleged PNC violated the FDCPA, FCRA, and GFBPA and PNC placed false and misleading items on Plaintiff's credit report regarding the Lithonia Property. On January 11, 2023, the District Court dismissed Plaintiff's claims against PNC (District Court Doc. No. 236). The dismissal turned on definitions and specific provisions of the applicable consumer protection statutes. The District

8

Court did not consider or adjudicate whether PNC violated the automatic stay or discharge injunction.

Here, Plaintiff claims PNC violated the automatic stay and discharge injunction. Many of the factual allegations supporting these claims are distinct from those raised in the District Court action, and the legal claims raised in this adversary proceeding were not previously decided by the District Court. Moreover, as the District Court recognized, the bankruptcy court is the appropriate court to determine these issues. See also Pereira v. First N. Am. Nat. Bank, 223 B.R. 28, 31 (N.D. Ga. 1998) (bankruptcy court that issued the discharge injunction is proper forum for dispute regarding violations of discharge injunction). Dismissal for lack of jurisdiction is not warranted.

    c. **Other grounds for dismissal**

PNC also purports to incorporate grounds for dismissal asserted by the Engle Defendants. The allegations regarding the Engle Defendants relate to a different property, different time period, and different actions than those involving PNC. The Engle Defendant's arguments regarding the sufficiency of the allegations against them do not apply to PNC. Accordingly, the purported incorporation by reference makes no sense given the different allegations and identities of the parties. See Herrera v. Santa Fe Pub. Sch., 41 F. Supp. 3d 1188, 1239 (D.N.M. 2014); Gonzalez v. Wright, 665 F. Supp. 2d 334, 353 (S.D.N.Y. 2009) (arguments that were successful for other defendants do not apply).

PNC fails to specifically identify any other bases for dismissal other than those discussed above. The burden is on the moving party to clearly identify the basis of its motion and the relief that it seeks in filing this motion. See Fed. R. Civ. P. 7(b)(1) (providing that motions before the Court must "state with particularity the grounds for seeking the order; and state the relief sought"). The moving party's duty to do so is especially important where it is filing a motion against pro se

9

litigants who, presumably, are not well-positioned to speculate as to why the movant might have filed a particular motion and to respond accordingly. Carter v. H2R Rest. Holdings, LLC, 2017 WL 4174805, at *4 (N.D. Tex. Aug. 1, 2017), report and recommendation adopted, 2017 WL 4174800 (N.D. Tex. Sept. 19, 2017). The Motion does not state with particularity any grounds for dismissal other than lack of subject matter jurisdiction. Plaintiff and the Court should not be forced to guess as to PNC's arguments. Accordingly, PNC has failed to establish any basis for dismissal.

For the reasons stated above,

**IT IS ORDERED** that the Motion is **DENIED**.

**END OF DOCUMENT**

**Distribution List**

Emmanuel O Ohai
863 Flat Shoals Rd. SE
C #155
Conyers, GA 30094

William Lasker
Ballard Spahr
Utah One Center - Suite 800
201 S. Main St.
Salt Lake City, UT 84111-2221