**IT IS ORDERED as set forth below:**



Date: August 23, 2023

_____
**Wendy L. Hagenau**
U.S. Bankruptcy Court Judge

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 12-65475-WLH |
| EMMANUEL OHAI, | CHAPTER 7 |
| Debtor. | |
| EMMANUEL OHAI, | ADVERSARY PROCEEDING NO. 23-5041-WLH |
| Plaintiff, | |
| v. | |
| DELTA COMMUNITY CREDIT UNION, PNC BANK NATIONAL ASSOCIATION, INC., DEAN ENGLE & PARK TREE INVESTMENTS, LLC, PARK TREE 20 INVESTMENTS, LLC, FCI LENDER SERVICES, INC., DANIEL I. SINGER & SINGER LAW GROUP, PHILLIP L. JAUREGUI D/B/A JAUREGUI & LINDSAY LLC, MICHAEL W. LINDSEY D/B/A, JAUREGUI & LINDSEY, LLC, MICROBILT CORPORATION, | |
| Defendants. | |

**ORDER ON DANIEL I. SINGER DBA SINGER LAW GROUP'S MOTION TO DISMISS**

      **THIS MATTER** is before the Court on the Motion to Dismiss Complaint filed by Daniel

I. Singer dba Singer Law Group ("Singer") (Doc. No. 26), and Plaintiff's Response (Doc. No. 29).

1

The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the claim of violating the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O). See In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (it is axiomatic that this Court has subject matter jurisdiction to consider such core matters); In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009).

I.   FACTS

Plaintiff and his now ex-wife purchased their primary residence at 2715 Tradd Court, Snellville, Georgia (the "Tradd Property") in April 2006 and executed a note and security deed in favor of Delta Community Credit Union ("Delta") (the "Tradd Mortgage Loan"). In March 2008, Plaintiff and his now ex-wife obtained a home equity loan in the amount of $46,000 from Delta, secured by a second security deed (the "Tradd HELOC"). Plaintiff and his now ex-wife defaulted on the Tradd HELOC in 2010.

In the meantime, on June 20, 2012, Plaintiff and his now ex-wife filed a petition under Chapter 7 of the Bankruptcy Code. On Schedule D, Delta was listed as holding two secured claims: one for $98,352.00 and another for $39,615.00, both secured by the Tradd Property. The Chapter 7 Trustee, Janet G. Watts, conducted the 341 meeting of creditors on July 17, 2012, and filed a Report of No Distribution on August 16, 2012. The bankruptcy case was closed and discharged on October 5, 2012 (Bankr. Doc. No. 14).[1]

Plaintiff continued to live in the Tradd Property. Delta allegedly first sold the Tradd HELOC in February 2012 (pre-petition). The Tradd HELOC was then sold to Park Tree Investments 20, LLC ("PTI20") by May 23, 2017. PTI20 transferred servicing of the Tradd HELOC in May 2018 to FCI Lender Services ("FCI"). Upon receipt of the notice that FCI was the

---

[1] While reopening is not required, the Court nevertheless entered an order on July 14, 2023 reopening the bankruptcy case.

2

servicer, Plaintiff sent a letter to FCI pursuant to 15 U.S.C. § 1692(f) demanding validation and verification of the debt. FCI and PTI20 engaged Singer to respond to the inquiry and in connection with foreclosure proceedings against the Tradd Property.

> Singer sent Plaintiff a responsive letter on July 11, 2018 stating:
>
> Please be advised that this office was asked by FCI Lender Services and Park Tree Investments 20, LLC (the noteholder) to respond to your correspondence dated June 8, 2018 regarding the above-referenced loan account. Although you do not appear to be disputing the validity of the debt, your letter demands verification of the subject debt pursuant to 15 U.S.C. Section 1692(f).
>
> Accordingly, enclosed herein please find the following documents:
>
>> Copy of the subject original Note;
>>
>> Copy of' the subject recorded Mortgage; and
>>
>> Reinstatement quote and payoff quote evidence the balances owed under your owed (sic) and a description of how our client's servicer arrived at the current payoff and reinstatement amounts.
>
> I believe the enclosed sufficient (sic) responds to inquiry. If not, please let me know. Also, should you wish to learn more about the home retention options available to you, please contact Jennifer Zartman at 866.290.8795.

The second page of the letter included a "NOTICE PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT." The notice stated, "if you have received a discharge of this debt *in* bankruptcy or *are currently in* a bankruptcy case, this notice is not intended as an attempt to collect a debt, and however we have a security interest in the property and will only exercise our rights as against the property."

Then, on July 16, 2018, Singer sent Plaintiff a letter stating, "You are receiving this notice because your second mortgage is in default, and your property is in jeopardy of being referred to foreclosure." The letter identified Park Tree Investments 20, LLC as the noteholder. The letter provided Plaintiff an itemized account summary as of August 17, 2018, stating the amount needed to reinstate or bring the account current was $36,740.07. The letter explained, "[i]f the default is

3

not cured on or before August 17, 2018 the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure will be initiated at that time. The failure to cure the default may result in the foreclosure and sale of your property." The letter did not include on its face a statement stating it was not an attempt to collect personally, but there is nothing in the letter stating or indicating that Plaintiff was personally liable.[2]

Later, on January 7, 2020, Plaintiff's counsel (Leon Van Gelderen) sent a letter to Singer stating,

> I represent Mr. Ohai who made a demand for verification of the debt owed on his second mortgage in 2018. The information supplied by your firm is inadequate to establish Park Tree's Rights in the note and security deed. Please provide documentation showing transfer and assignment of the security deed by the grantor, Delta Community Credit Union, and allonges to the promissory note showing your client as transferee.

Singer sent a responsive email to Plaintiff's attorney on February 5, 2020.

District Court Litigation

On May 26, 2020, Plaintiff filed a complaint in the United States District Court for the Northern District of Georgia, *Ohai v. Delta Community Credit Union et al* Civil Action No. 1:20-cv-02220-SCJ-JEM against Singer and others. Plaintiff alleged violations of several consumer protection statutes (the Fair Credit Reporting Act ("FCRA"), Equal Credit Opportunity Act ("ECOA"), Fair Debt Collection Practices Act ("FDCPA"), Georgia Fair Business Practices Act ("GFBPA")), invasion of privacy, and "defamation—libel". The original complaint did not allege a violation of the discharge injunction. Plaintiff filed an amended complaint (District Court Doc. No. 11) on June 15, 2020. It included claims that Singer violated the FDCPA, the GFBPA, and the discharge injunction, and engaged in "defamation-libel."

---

[2] Singer contends the same FDCPA notice included with the July 11 letter was attached to the July 16 letter.

4

Plaintiff sought to further amend his complaint and filed a Motion for Leave to File the Second Amended Complaint (District Court Doc. No. 108). The court ultimately denied Plaintiff's request to amend the complaint (District Court Doc. No. 149), but the court granted the motion "to the extent that Plaintiff seeks to dismiss his claim for a bankruptcy discharge injunction." Accordingly, the court ruled the First Amended Complaint (District Court Doc. No. 11)—without claim XI regarding the discharge injunction—was the operative complaint (District Court Doc. No. 149 at 45-46.) At this point, then, the discharge injunction was not at issue in the District Court.

Singer filed a motion to dismiss the operative complaint (District Court Doc. No. 50). The District Court found Plaintiff's FDCPA claim, based on the July 11 and July 16 letters, was time-barred under the FDCPA's one-year statute of limitations, and dismissed all counts against Singer (District Court Doc. No. 236).

<u>Adversary Proceeding</u>

On March 29, 2023, Plaintiff filed the complaint against Singer, certain mortgage holders, certain other debt collectors, and a consumer reporting agency. The complaint relates to two separate properties, but the actions of Singer only relate to the Tradd Property. Plaintiff asserts Singer violated the discharge injunction by attempting to collect discharged debt, particularly by sending the July 11, 2018 and July 16, 2018 letters. Singer filed the Motion alleging the complaint is time barred, the communications complied with the FDCPA, and the communications were responsive and sent in connection with the proper institution of foreclosure proceedings.

II. **LAW**

    A. **Motion to Dismiss for Failure to State a Claim**

Singer seeks dismissal of the complaint pursuant to Federal Rule of Bankruptcy Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a

5

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

While the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678, the purpose of a motion to dismiss is not to resolve disputed facts or decide the merits of a case. Rather, the purpose of a motion to dismiss is to ensure that the plaintiff has provided notice of the grounds which entitle him to relief. Twombly, 550 U.S. at 561. The facts alleged must be taken as true, and dismissal is inappropriate merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Official Comm. of Unsecured Creditors of Tousa, Inc. v. Technical Olympic, S.A. (In re Tousa), 437 B.R. 447, 452 (Bankr. S.D. Fla. 2010) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).

### B. Discharge Injunction

Section 524 governs a debtor's discharge in bankruptcy. It provides that a bankruptcy discharge, among other things:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). "The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as: letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment." In re McConnie Navarro, 563 B.R. 127, 141

6

(Bankr. D.P.R. 2017) (citation omitted).

Pursuant to section 105, a bankruptcy court may enforce the discharge injunction and "order damages if the circumstances so require." Id. Sanctions for violations of the discharge injunction are in the nature of civil contempt. Id. The Supreme Court has held that a bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019). In Taggart, the Supreme Court explained that means "there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." Id. at 1799. To meet this standard, the party that violated the discharge injunction must have acted with knowledge of it. In re Cowan, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020) (citing In re Milani, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020)). Further, to discern whether an act is one to collect a debt, courts consider whether the conduct objectively had the practical effect of improperly coercing payment of a discharged debt. In re Minech, 632 B.R. 274, 282 (Bankr. W.D. Pa. 2021); In re Roth, 935 F.3d 1270, 1278–79 (11th Cir. 2019) (emphasis in original) (the court must determine "whether the *objective* effect of [the act] . . . is to pressure a debtor to repay a discharged debt"). "In this regard, a subjective good faith belief that the action taken does not violate the discharge injunction is not sufficient to avoid sanctions if such a belief is not objectively reasonable." Milani, 2020 WL 5551990, at *5.

The discharge injunction, however, has limits. A Chapter 7 discharge releases the debtor from all debts that arose before the petition date, but it only extinguishes "personal liability of the debtor." 11 U.S.C. §§ 727(b), 524(a)(2). The discharge does not affect a secured creditor's interest in real property, and a creditor's right to foreclose on a mortgage survives the bankruptcy. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); see also Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy"); Bentley v. OneMain

7

Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) ("The concept that a lien 'rides through' bankruptcy is axiomatic."). "[A]fter the automatic stay terminates as to the property, a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." In re Best, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (citation omitted).

Section 524 does not bar all contact with a discharged debtor. Indeed, section 524(j) provides an exception to the discharge injunction for creditors who hold claims secured by the debtor's principal residence as long as the creditor's acts are in the ordinary course of business between the debtor and the creditor and limited to seeking payments in lieu of in rem relief (i.e. foreclosure). This section provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). All three requirements must be met for the exception to apply. In re Lemieux, 520 B.R. 361, 368 (Bankr. D. Mass. 2014). "The law thus attempts to create a safe harbor for a mortgage servicer to continue to send advices of and payment books to the debtor even if the personal debt has been discharged." McConnie Navarro, 563 B.R. at 142 (citation omitted). The purpose of section 524(j) is to permit certain post-discharge actions of a secured creditor when the debtor remains in his or her home. See In re Whitaker, 2013 WL 2467932, at *8-9 (Bankr. E.D. Tenn. June 7, 2013); In re Steinberg, 447 B.R. 355, 359 (Bankr. S.D. Fla. 2011). As one court explained, the exception in section 524(j) "makes sense" because it "would allow a secured creditor to remain in contact with a debtor who was living in the real property as his principal

8

residence, send communications in the regular course of business, and explore the possibility of the debtor retaining his principal residence—i.e., collecting payments in lieu of foreclosure." Bibolotti v. American Home Mortgage Servicing, Inc., 2013 WL 2147949, *9 (E.D. Tex. May 15, 2013).

The distinction between communications that improperly seek to impose personal liability on a debtor and those that merely seek periodic payments in lieu of foreclosure is dependent, to a great extent, on the content of the correspondence. In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019). The court must determine "whether the *objective* effect of [a communication] is to pressure a debtor to repay a discharged debt". Roth, 935 F.3d at 1278–79 (emphasis in original). "[T]he line between forceful negotiation and improper coercion is not always clear." McConnie Navarro, 563 B.R. at 143 (citation omitted). "An action is considered coercive when it is 'tantamount to a threat' . . . or places the debtor 'between a rock and a hard place.'" Id. "[C]ourts consider the 'immediateness' of the threatened action and the context in which this action took place." Id.

"Although not entirely dispositive, inclusion of 'clear and prominent disclaimers" informing discharged debtors that the creditor is 'solely seeking payment as a substitute for pursuing [its] in rem rights' is an effective way for the creditor to identify the purposes of the communications and to ensure that violation of the discharge injunction does not occur." Cantrell, 605 B.R. at 856; see also Best, 540 B.R. at 11 (existence of disclaimer language, however, will not insulate an otherwise improper demand for payment). Accordingly, the existence of disclaimer language in post-discharge communications with debtors is often a significant factor in determining whether the communications violate the discharge injunction. Thomas v. Seterus Inc. (In re Thomas), 554 B.R. 512, 520-21 (Bankr. M.D. Ala. 2016). The inclusion of an "amount due," "due date," and statements about an escrow balance does not diminish the effect of a prominent,

9

clear, and broadly worded disclaimer. Roth, 935 F.3d at 1276.

Additionally, informational responses to inquiries from a debtor that do not make a demand for payment do not violate the discharge injunction. In re Mele, 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013). In Cantrell, 605 B.R. 841, for example, the debtor received several letters sent in response to inquiries he had made and contact he had initiated. All but one of the letters included disclaimer language noting the bankruptcy and the discharge of the debtor's personal liability on the debt. The court concluded that, even in the absence of disclaimer language, the communications could not be construed as seeking to collect the mortgage debt as a personal liability of the debtor. Id. at 857.

    a. **Application to Allegations**

        i. **The Complaint is Not Time Barred**

Singer argues the complaint should be dismissed because the allegations are time barred since Debtor's Chapter 7 bankruptcy proceeding was filed and discharged 10 years ago. Singer refers to the statute of limitations under the FDCPA. But Plaintiff is not seeking relief under the FDCPA in this adversary proceeding. Rather, Plaintiff alleges Singer violated the discharge injunction. There are no statutory time limits on filing a claim for a violation of the discharge injunction. In re Morris, 570 B.R. 708, 712 (Bankr. M.D. Pa. 2017). Plaintiff's claim that Singer violated the discharge injunction is therefore not time barred.

Singer also argues Plaintiff is barred by the equitable doctrine of laches. Laches is an equitable defense "that serves to bar suit by a plaintiff 'whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'" Black Warrior Riverkeeper, Inc. v. U.S. Army Corp of Eng'rs, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting Russell v. Todd, 309 U.S. 280, 287 (1940)). Under the doctrine, a defendant must prove: "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [a defendant] undue prejudice."

10

Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc., 2015 WL 11256661, at *2 (N.D. Ga. July 1, 2015) (citing U.S. v. Barfield, 396 F.3d 1144, 1150 (11th Cir. 2005)) (alteration in original); Black Warrior Riverkeeper, 781 F.3d at 1283. To determine whether laches applies, courts must look to the specific facts of each case and decide whether a plaintiff's delay in bringing suit was reasonable. In re Lett, 2021 WL 4944094, at *9 (Bankr. N.D. Ga. Oct. 22, 2021). The actions of which Plaintiff complains occurred much more recently in 2018 and 2020. Plaintiff initially filed suit in District Court in 2020. Any delay in filing the complaint in this Court was not unreasonable. Nor has Singer demonstrated it would be prejudiced in defending this action. The "[p]assage of time in itself does not constitute prejudice." In re Bianucci, 4 F.3d 526, 528 (7th Cir. 1993). Accordingly, laches does not apply and dismissal on the basis of delay is not warranted.

### ii. The FDCPA is Distinct from the Discharge Injunction

Second, Singer contends dismissal is appropriate because Plaintiff filed a complaint in District Court alleging nearly identical claims and Singer's communications complied with the FDCPA. Singer misconstrues the complaint. The complaint does not allege a violation of the FDCPA. Rather, Plaintiff contends Singer violated the discharge injunction, which is distinct from a claim under the FDCPA.

While the FDCPA and the discharge injunction share some similarities, they are not the same. Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010). Among other things, the FDCPA prohibits debt collectors from communicating with consumers at an "unusual time or place" or using obscene or profane language or violence or the threat thereof. Id. The FDCPA and the Bankruptcy

11

Code "have different elements, require different levels of scienter, offer different defenses, and allow different damages where someone attempts to collect on discharged debt." Rios v. Bakalar & Assocs., P.A., 795 F. Supp. 2d 1368, 1370 (S.D. Fla. 2011). The Bankruptcy Code and the FDCPA are not irreconcilable and creditors are under the obligation to follow both. In re Martel, 539 B.R. 192, 198 (Bankr. D. Me. 2015). A debtor may thus seek relief under one, the other, or both. Randolph v. IMBS, Inc., 368 F.3d 726 (7th Cir. 2004) (holding that the Bankruptcy Code does not implicitly repeal the FDCPA such as to preclude overlapping claims for relief based on actions in violation of the Bankruptcy Code); Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86, 91 (2d Cir. 2016).

Plaintiff's claim that Singer violated the discharge injunction is distinct from Plaintiff's claim in the District Court under the FDCPA. The two involve distinct inquiries and, as Plaintiff has not alleged Singer violated the FDCPA in this proceeding, whether Singer complied with the FDCPA is not at issue here.

### iii.  Allegations Regarding the Discharge Injunction

Finally, Singer contends the complaint fails to state a plausible claim for relief because the discharge injunction does not prevent it from communicating with Plaintiff and 1) the July 11 letter was sent in response to Plaintiff's debt validation request, and 2) the July 16 letter was sent in connection with the proper institution of foreclosure proceedings, was required by state law, and falls within the exception provided by section 524(j).

In analyzing the sufficiency of these allegation, it is important to understand the scope of a bankruptcy discharge. While Plaintiff contends he was completely discharged from all debt, the bankruptcy discharge has certain limitations, as described above. The bankruptcy discharge does not extinguish liens on property, and the holder of such liens may enforce its rights to the property and take certain actions in the ordinary course of business to ensure the debtor has the opportunity

12

to avoid foreclosure by paying the debt, even though the debtor is no longer personally liable for the debt.

Section 524 does not bar a creditor from communicating with a debtor about a debt or in response to inquiries from the debtor. The Court must consider all the contents of the communication and the context in which the communication is sent. McConnie Navarro, 563 B.R. at 143. Courts commonly find communications sent in response to a request for validation of debt are permissible. In Cantrell, for example, the court concluded that letters sent to the debtor in response to inquiries he had made, and contact he had initiated, could not be construed as seeking to collect the mortgage debt as a personal liability of the debtor. 605 B.R. at 857; see also Mele, 486 B.R. at 557; In re Henriquez, 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015) (informational letters did not have the objective effect of pressuring the debtors to pay the discharged debt). Similarly, in In re Lett, 635 B.R. 713 (Bankr. N.D. Ga. 2022), the court found a "Validation of Debt Notice" that explained the sender's duties as servicing agent, provided a breakdown of the debt, and advised plaintiff of her rights to dispute the validity of the debt, was informational in nature. The last line of the letter had said, "This communication from a debt collector is an attempt to collect a debt[.]" Id. at 723. Notwithstanding the statement, the court found the notice did not violate the discharge injunction. Id. This is not to say that a mortgage servicer may never be found to have violated the discharge injunction. See Golden, 568 B.R. at 842 (citing cases). But the plaintiff must show something in addition to routine mortgage servicing or foreclosure processing. Id.

1. **July 11 Letter**

Plaintiff sent FCI a letter requesting validation and verification of the debt. On July 11, 2018, Singer sent Plaintiff a responsive letter stating Singer was "asked by FCI Lender Services and Park Tree Investments 20, LLC (the noteholder) to respond to your correspondence dated June 8, 2018 regarding the above-referenced loan account. Although you do not appear to be disputing

13

the validity of the debt, your letter demands verification of the subject debt pursuant to 15 U.S.C. Section 1692(f)." The letter enclosed several documents responsive to Plaintiff's request including a reinstatement quote and payoff quote showing the balances owed and a description of how the servicer arrived at the amounts. The second page of the letter included a notice stating, "if you have received a discharge of this debt *in* bankruptcy or *are currently in* a bankruptcy case, this notice is not intended as an attempt to collect a debt, and however we have a security interest in the property and will only exercise our rights as against the property."

The objective effect of the July 11 communication was not to pressure Plaintiff to repay a discharged debt. The letter was sent to Plaintiff in response to an inquiry he made and contact he initiated. The July 11 letter was clearly identified as a "Response to Consumer Correspondence," not a demand letter. It provided information regarding the loan and listed the current payoff amount, as requested by Plaintiff. The letter also included a bankruptcy disclaimer. The allegations do not plausibly state a claim that Singer violated the discharge injunction by communicating with him through the July 11 letter.

### 2. July 16 Letter

On July 16, 2018, Singer sent Plaintiff a letter stating, "You are receiving this notice because your second mortgage is in default, and your property is in jeopardy of being referred to foreclosure." The letter identified Park Tree Investments 20, LLC as the noteholder. The letter provided Plaintiff an itemized account summary as of August 17, 2018, stating the amount needed to reinstate or bring the account current was $36,740.07. The letter explained, "[i]f the default is not cured on or before August 17, 2018 the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure will be initiated at that time. The failure to cure the default may result in the foreclosure and sale of your property."

14

Singer contends the July 16 letter was properly sent in preparing for foreclosure proceedings and was not an attempt to collect a debt. On the one hand, a "Notice of Default and Right to Cure Default" may violate the discharge order where it indicates the debtor may be held liable for any deficiency balance not realized from the sale of the property. See Fauser v. Green Tree Servicing, LLC (In re Fauser), 545 B.R. 907, 915 (Bankr. S.D. Tex. 2016). In In re Berry, 2022 WL 4115752, at *16 (B.A.P. 6th Cir. Sept. 9, 2022), for example, the debtor received a formal notice of default that indicated it was a "demand for payment" and also informed the debtor that the creditor "may pursue a deficiency judgment, if permitted by applicable law" after the debtor's personal liability had been discharged and after the property had been foreclosed.

On the other hand, a formal notice of default may make sense in "the context of preventing foreclosure." Courts have distinguished situations where a lender is required by state law to send a pre-foreclosure notice from other forms of communications. In re Gill, 529 B.R. 31, 40–41 (Bankr. W.D.N.Y. 2015); Mele, 486 B.R. at 558 (acknowledging that "in order to pursue in rem rights, rights that are expressly preserved and recognized in § 524, [the creditor] is required to provide certain notices and information to [the debtor]"). Such notices may be a legislatively mandated precondition to a foreclosure action. Gill, 529 B.R. at 42. In Lett, for example, the debtor received a letter titled "Notice of Default" notifying debtor that her loan was in default, the steps she could take to cure the default, the amount needed to cure the default, and that the consequences of failure to cure the default could be foreclosure and the loss of her home. 635 B.R. at 723. At the top of the letter was a statement in all caps, bolded, and underlined that says: "PLEASE READ THIS NOTICE CAREFULLY, TAKE ACTION TO AVOID THE LOSS OF YOUR PROPERTY." Although the letter also indicated, "This letter is a formal demand for payment[,]" the court found the statement "was clearly made in the context of preventing foreclosure. Indeed, the entire tenor of the letter is to provide Plaintiff with information about avoiding foreclosure."

Id. The court concluded the servicer did not violate the discharge injunction by sending the notice of default. See also Cantrell, 605 B.R. at 857-58 (finding that notices regarding potential foreclosure or acceleration of the loan "were solely for purpose of obtaining payment in lieu of foreclosure proceedings"); Best, 540 B.R. at 11 (post-discharge correspondence was limited to either seeking payment on the note so that it would not be forced to foreclose, or for informational purposes only).

Courts also recognize that compliance with state-mandated foreclosure procedures, including communication of written notices to debtors, is not a violation of the discharge injunction. See In re Ho, 624 B.R. 748, 752–53 (Bankr. E.D.N.Y. 2021). In Ho, for example, the court found that certain state-mandated pre-foreclosure notices were for informational purposes and did not violate the discharge injunction. Id. at 753; see also In re Golden, 568 B.R. 838, 841–42 (Bankr. M.D. Ala. 2017) (notices did not violate the discharge injunction where creditor has the right to foreclose a mortgage and where the creditor is required to give the debtor certain notices under the terms of the mortgage or applicable law). Georgia law requires certain state-mandated pre-foreclosure notices. O.C.G.A. § 44-14-162.2.

Moreover, even if a letter constitutes an act to collect a debt, it may be permitted by section 524(j). Best, 540 B.R. at 11. Despite the discharge injunction, under section 524(j), a mortgagee with a lien on a debtor's principal residence is permitted to send statements to a debtor in the ordinary course of business, instead of seeking in rem relief, permitting the debtor to pay the secured debt and keep the property. In re Gill, 529 B.R. 31, 38 (Bankr. W.D.N.Y. 2015); see also In re Manning, 505 B.R. 383, 387 (Bankr. D. N.H. 2014) (lender's requests that debtor become current to avoid in rem relief fell within the safe harbor of section 524(j)).

The July 16 letter notified Plaintiff that the Tradd HELOC was in default, and the Tradd Property was in jeopardy of being referred to foreclosure. The face of the letter did not include a

16

prominent disclaimer or any language about bankruptcy or discharge, but Singer contends an FDCPA notice was attached to the letter. The Court need not make a determination as to whether it was actually included with the July 16 letter; its existence is not determinative. The account summary and statement "[i]f the default is not cured . . . the mortgage payments will be accelerated in full" was made in the context of preventing foreclosure. The letter did not state anything about attempting to collect the debt from Plaintiff personally. As with the letter at issue in Lett, the entire tenor of the July 16 letter was to provide Plaintiff with information about avoiding foreclosure. The July 16 letter was not coercive and cannot fairly be read as threatening to proceed against Plaintiff personally. Rather, it was sent for informational purposes in the event Plaintiff wanted to cure the default in order to prevent foreclosure. Pre-foreclosure notice was also required under Georgia law. Moreover, a request for Plaintiff to become current to avoid in rem relief falls within the safe harbor of section 524(j) where, as here, Singer sent the letter on behalf of PTI20, which retained a security interest in Plaintiff's principal residence.

### 3. February 5, 2020 Email

In his response to the Motion, Plaintiff references a third communication, an email sent from Singer to Plaintiff's attorney (Leon Van Gelderen) on February 5, 2020. The email was allegedly sent in response to a letter from Mr. Van Gelderen to Singer on January 7, 2020. The February email is not attached to the complaint, but the January 7 letter is. When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." Sposato v. First Mariner Bank, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013). Courts may, when ruling on a motion to dismiss, consider materials or elaborations in a plaintiff's trial brief or response to a motion to dismiss consistent with the pleadings. See Heng v. Heavner, Beyers & Mihlar, LLC, 849 F.3d 348, 353–54 (7th Cir. 2017); Gutierrez v. Peters, 111

17

F.3d 1364, 1367 n.1 (7th Cir. 1997) (finding that a court may consider facts submitted in a pro se plaintiff's brief opposing a motion to dismiss when the facts are consistent with the allegations in the complaint).

The February 5 email is described as being in response to a letter sent at Plaintiff's request. The January 7 letter stated Plaintiff had made a demand for verification of the debt owed on his second mortgage and the information supplied in response was "inadequate." Counsel requested Singer "provide documentation showing transfer and assignment of the security deed by the grantor, Delta Community Credit Union, and allonges to the promissory note showing your client as transferee." Informational responses to inquiries from a debtor that do not make a demand for payment do not violate the discharge injunction, even in the absence of disclaimer language. Mele, 486 B.R. at 557; Cantrell, 605 B.R. at 857.

The complaint fails to state a plausible claim that Singer's February 5, 2020 communication in response to Plaintiff's request for information violated the discharge injunction. Plaintiff provides no details other than that the communication was sent in response to an inquiry he initiated. In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must provide Singer with notice of a cognizable claim asserted against it for violation of the discharge injunction, i.e. it must allege, with specificity, an act to collect occurred. See Williams, 612 B.R. at 692; In re Motichko, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008). Plaintiff's generalized grievance regarding the February 5, 2020 communication does not include specific factual content to survive Singer's Rule 12(b)(6) Motion to Dismiss.

**IT IS ORDERED** that the Motion is **GRANTED** as provided herein.

**IT IS FURTHER ORDERED** that Plaintiff's claim Singer violated the discharge injunction is **DISMISSED**.

**END OF DOCUMENT**

**Distribution List**

Emmanuel O Ohai
863 Flat Shoals Rd. SE
C #155
Conyers, GA 30094

Erin M. Rose Quinn
Quinn Legal, P.A.
19321 US Hwy 19 N, Suite 512
Clearwater, FL 33764