

**IT IS ORDERED as set forth below:**

**Date: August 23, 2023**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-65475-WLH |
| EMMANUEL OHAI, | CHAPTER 7 |
|      Debtor. | |
| EMMANUEL OHAI, | ADVERSARY PROCEEDING NO. 23-5041-WLH |
|      Plaintiff, | |
| v. | |
| DELTA COMMUNITY CREDIT UNION, PNC BANK NATIONAL ASSOCIATION, INC., DEAN ENGLE & PARK TREE INVESTMENTS, LLC, PARK TREE 20 INVESTMENTS, LLC, FCI LENDER SERVICES, INC., DANIEL I. SINGER & SINGER LAW GROUP, PHILLIP L. JAUREGUI D/B/A JAUREGUI & LINDSAY LLC, MICHAEL W. LINDSEY D/B/A, JAUREGUI & LINDSEY, LLC, MICROBILT CORPORATION, | |
|      Defendants. | |

## ORDER ON MICROBILT CORPORATION'S MOTION TO DISMISS

1

**THIS MATTER** is before the Court on the Motion to Dismiss Complaint filed by MicroBilt Corporation ("MicroBilt") (Doc. No. 18) (the "Motion"), and Plaintiff's response thereto (Doc. No. 22). The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the claim of violating the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O). See In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (it is axiomatic that this Court has subject matter jurisdiction to consider such core matters); In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009).

I.    FACTS

Plaintiff and his now ex-wife purchased their primary residence at 2715 Tradd Court, Snellville, Georgia (the "Tradd Property") in April 2006 and executed a note and security deed in favor of Delta Commercial Credit Union ("Delta") (the "Tradd Mortgage Loan"). In March 2008, Plaintiff and his now ex-wife obtained a home equity loan in the amount of $46,000 from Delta, secured by a second security deed on the Tradd Property (the "Tradd HELOC"). Plaintiff and his now ex-wife defaulted on the Tradd HELOC in 2010. The Tradd HELOC was subsequently sold by Delta and, in May 2017, it was sold again to Park Tree Investments 20, LLC, with Park Tree Investments, LLC ("PTI") as its servicing agent. In April 2018, Plaintiff received notice that the servicer was now FCI Lender Services, Inc. on behalf of Park Tree Investments 20, LLC.

In the meantime, on June 20, 2012, Plaintiff and his now ex-wife filed a petition under Chapter 7 of the Bankruptcy Code. On Schedule D, Delta was listed as holding two secured claims: one for $98,352.00 and another for $39,615.00, both secured by the Tradd Property. The Chapter 7 Trustee, Janet G. Watts, conducted the 341 meeting of creditors on July 17, 2012, and filed a Report of No Distribution on August 16, 2012. The bankruptcy case was closed and discharged on

October 5, 2012 (Bankr. Doc. No. 14). [1]

On January 28, 2019 and February 3, 2020, MicroBilt obtained Plaintiff's consumer reports from Experian and/or Equifax (Doc. No. 1, Ex Y). Plaintiff disputed the inquiries, and MicroBilt informed Plaintiff the reports were pulled at the request of PTI. When PTI failed to respond to MicroBilt's request for verification of authority, MicroBilt removed the inquiries.

<u>District Court Litigation</u>

On May 26, 2020, Plaintiff filed a complaint in the United States District Court for the Northern District of Georgia, *Ohai v. Delta Community Credit Union et al* Civil Action No. 1:20-cv-02220-SCJ-JEM, against MicroBilt and others alleging violations of the Fair Credit Reporting Act (the "FCRA"), Equal Credit Opportunity Act (the "ECOA"), the Fair Debt Collection Practices Act (the "FDCPA"), the Georgia Fair Business Practices Act (the "GFBPA"), invasion of privacy, and "defamation—libel". The original complaint did not allege a violation of the automatic stay or discharge injunction. Plaintiff filed an amended complaint (District Court Doc. No. 11) on June 15, 2020. It claimed MicroBilt violated the FCRA, the GFBPA, and the discharge injunction.

Plaintiff sought to further amend his complaint and filed a Motion for Leave to File the Second Amended Complaint (District Court Doc. No. 108). The court ultimately denied Plaintiff's request to amend the complaint (District Court Doc. No. 149), but the court granted the motion "to the extent that Plaintiff seeks to dismiss his claim for a bankruptcy discharge injunction." Accordingly, the court ruled the First Amended Complaint (District Court Doc. No. 11)—without claim XI regarding the discharge injunction—was the operative complaint (District Court Doc.

---

[1] While reopening is not required, the Court nevertheless entered an order on July 14, 2023 reopening the bankruptcy case.

No. 149 at 45-46.) At this point, then, neither the automatic stay nor the discharge injunction were at issue in the District Court.

MicroBilt filed a motion to dismiss the complaint. The District Court dismissed Plaintiff's claims for invasion of privacy and violations of the GFBPA but denied it as to the count under the FCRA, concluding the allegations that MicroBilt failed to investigate Plaintiff's dispute were enough to allege a violation of the FCRA (District Court Doc. No. 236). MicroBilt sought reconsideration of the order denying its motion to dismiss (District Court Doc. No. 241), which the District Court denied (District Court Doc. No. 290).

MicroBilt filed a motion to stay the District Court proceedings pending resolution of this adversary proceeding. The District Court deemed it proper for discovery to move forward and denied the request (District Court Doc. No. 302). Accordingly, Plaintiff's claim under the FCRA remains pending against MicroBilt in the District Court.

<u>Adversary Proceeding</u>

Plaintiff filed a complaint against MicroBilt, certain mortgage holders, and certain debt collectors on March 29, 2023. Plaintiff alleges the "hard inquiries" on his credit report were not authorized because he had been discharged in his bankruptcy case. Plaintiff claims the inquiries by MicroBilt on behalf of PTI were in furtherance of PTI's attempt to collect a discharged debt and therefore violated the discharge injunction.

The Motion was filed on May 22, 2023 and alleges MicroBilt could not have violated the discharge injunction because it did not know of the discharge until receiving a letter from Plaintiff after the inquiries. Moreover, MicroBilt alleges it did not violate the FCRA or the discharge injunction and obtaining Plaintiff's credit report is not a discharge violation. Finally, it asserts Plaintiff's claim is barred by the FCRA statute of limitations.

4

## II.    LAW

### A.  Motion to Dismiss for Failure to State a Claim

MicroBilt seeks dismissal of the complaint pursuant to Federal Rule of Bankruptcy Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

While the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678, the purpose of a motion to dismiss is not to resolve disputed facts or decide the merits of a case. Rather, the purpose of a motion to dismiss is to ensure that the plaintiff has provided notice of the grounds which entitle him to relief. Twombly, 550 U.S. at 561. The facts alleged must be taken as true, and dismissal is inappropriate merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Official Comm. of Unsecured Creditors of Tousa, Inc. v. Technical Olympic, S.A. (In re Tousa), 437 B.R. 447, 452 (Bankr. S.D. Fla. 2010) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).

### B.  Discharge Injunction

Section 524 governs a debtor's discharge in bankruptcy. It provides that a bankruptcy discharge, among other things:

operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). "The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as: letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment." In re McConnie Navarro, 563 B.R. 127, 141 (Bankr. D.P.R. 2017) (citation omitted).

Pursuant to section 105, a bankruptcy court may enforce the discharge injunction and "order damages if the circumstances so require." Id. Sanctions for violations of the discharge injunction are in the nature of civil contempt. Id. The Supreme Court has held that a bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019). In Taggart, the Supreme Court explained that means "there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." Id. at 1799. To meet this standard, the party that violated the discharge injunction must have acted with knowledge of it. In re Cowan, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020) (citing In re Milani, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020)). Further, to discern whether an act is one to collect a debt, courts consider whether the conduct objectively had the practical effect of improperly coercing payment of a discharged debt. In re Minech, 632 B.R. 274, 282 (Bankr. W.D. Pa. 2021); Roth, 935 F.3d at 1278–79 (emphasis in original) (the court must determine "whether the *objective* effect of [the act] . . . is to pressure a debtor to repay a discharged debt"). "In this regard, a subjective good faith belief that the action taken does not violate the

discharge injunction is not sufficient to avoid sanctions if such a belief is not objectively reasonable." Milani, 2020 WL 5551990, at *5.

The discharge injunction, however, has limits. A Chapter 7 discharge releases the debtor from all debts that arose before the petition date, but it only extinguishes "personal liability of the debtor." 11 U.S.C. §§ 727(b), 524(a)(2). The discharge does not affect a secured creditor's interest in real property, and a creditor's right to foreclose on a mortgage survives the bankruptcy. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); see also Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy"); Bentley v. OneMain Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) ("The concept that a lien 'rides through' bankruptcy is axiomatic."). "[A]fter the automatic stay terminates as to the property, a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." In re Best, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (citation omitted).

Section 524 does not bar all contact with a discharged debtor. Indeed, section 524(j) provides an exception to the discharge injunction for creditors who hold claims secured by the debtor's principal residence as long as the creditor's acts are in the ordinary course of business between the debtor and the creditor and limited to seeking payments in lieu of *in rem* relief (i.e. foreclosure). This section provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—
>> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
>> (2) such act is in the ordinary course of business between the creditor and the debtor; and
>> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). All three requirements must be met for the exception to apply. In re Lemieux, 520 B.R. 361, 368 (Bankr. D. Mass. 2014). "The law thus attempts to create a safe harbor for a mortgage servicer to continue to send advices of and payment books to the debtor even if the personal debt has been discharged." McConnie Navarro, 563 B.R. at 142 (citation omitted).

### C.  Application to Allegations

#### i.  The Complaint is Not Time Barred

MicroBilt argues the complaint should be dismissed because the allegations are time barred since Debtor's Chapter 7 bankruptcy proceeding was filed and discharged 10 years ago. MicroBilt refers to the statute of limitations under the FCRA. But Plaintiff is not seeking relief under the FCRA in this adversary proceeding. Rather, Plaintiff alleges MicroBilt violated the discharge injunction by providing access to Plaintiff's consumer credit file.

There are no statutory time limits on filing a claim for a violation of the discharge injunction. In assessing a debtor's delay in seeking relief for violating the discharge injunction, the bankruptcy court should consider the time between the alleged violation of the discharge injunction and the filing of the motion, not how long the alleged violation occurred after the case was closed. In re MacIntyre, 2019 WL 1035683, at *4 (10th Cir. BAP Mar. 5, 2019). MicroBilt's argument that the complaint should be dismissed because it has been 10 years since the bankruptcy case was closed focuses on the time between when the case was closed and the filing of the complaint, instead of the time between the alleged discharge injunction violation and the filing of the complaint. The acts of which Plaintiff complains occurred much more recently, in 2019 and 2020. Plaintiff's claim that MicroBilt violated the discharge injunction is not time barred.

#### ii.  The FCRA is Distinct from the Discharge Injunction

Second, MicroBilt contends dismissal is appropriate because Plaintiff filed a complaint in

District Court alleging nearly identical claims and MicroBilt's furnishing of consumer reports complied with the FCRA. MicroBilt misconstrues the complaint. The complaint does not allege a violation of the FCRA. Rather, Plaintiff contends MicroBilt violated the discharge injunction, which is distinct from a claim under the FCRA.

Enacted in 1970, the FCRA governs "consumer reporting agencies" that maintain credit information on consumers and provide it to third parties. Washington v. CSC Credit Servs. Inc., 199 F.3d 263, 265 (5th Cir. 2000) (citing 15 U.S.C. § 1681 (stating the purpose of the FCRA); id. § 1681a(f) (defining "consumer reporting agencies")). The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). It imposes certain duties on furnishers of information to credit reporting agencies. See 15 U.S.C. § 1681s–2.

While the FCRA and the discharge injunction share some similarities, they are not the same and do not address the same issues. Hanks v. Talbots Classics Nat. Bank, 2012 WL 3236323, at *5 (N.D. Cal. Aug. 6, 2012) (citing Henry v. Saxon Mortg., Inc., 2011 WL 5331679, at *4 (D. Ariz. Nov. 7, 2011); In re Potes, 336 B.R. 731, 733 (Bankr. E.D. Va. 2005)).

> They differ in their objectives. The FCRA seeks to minimize credit reporting errors and to cure those that are made in a prompt and efficient manner. Actions under it generally involve mistakes. The discharge [injunction] is directed to enforcing the bankruptcy discharge. Actions under it generally involve intentional acts. The elements that must be proved under each statute may overlap, but they are not identical. The remedies available, while similar, may differ.

Id. A debtor may seek relief under one, the other, or both, as there is no express provision in either the FCRA or the Bankruptcy Code that either supersedes the other. See In re Miller, 2003 WL 25273851, at *2 (Bankr. D. Idaho Aug.15, 2003) (holding that "there appears to be no conflict in remedies between the FCRA and the [Bankruptcy] Code"); In re Pots, 336 B.R. 731, 733 (Bankr. E.D. Va. 2005) (holding that the FCRA and the Bankruptcy Code "co-exist"). Given the difference

between the two statutes, conduct that violates the FCRA may not necessarily violate the discharge injunction and vice versa. See Sullivan v. Experian Info. Sols., Inc., 2021 WL 24579, at *3 (D. Mass. Jan. 4, 2021) (the fact that "reporting of a discharged debt to [a credit reporting agency] may not constitute a violation of a bankruptcy discharge injunction does not mean that this information cannot constitute the basis of a [FCRA] claim if reported in a misleading fashion.").

Plaintiff's claim that MicroBilt violated the discharge injunction rests on MicroBilt's furnishing of his consumer report. This is distinct from Plaintiff's claim in the District Court under the FCRA regarding MicroBilt's alleged failure to reasonably investigate Plaintiff's dispute, which remains pending. The two involve distinct inquiries and, as Plaintiff has not alleged MicroBilt violated the FCRA in this proceeding, whether MicroBilt complied with the FCRA is not at issue here.

### iii.  Allegations Regarding the Discharge Injunction

Finally, MicroBilt contends the complaint fails to state a plausible claim for relief because the discharge injunction does not prevent it from obtaining and providing Plaintiff's credit report to its clients. In analyzing the sufficiency of these allegation, it is important to understand the scope of a bankruptcy discharge. While Plaintiff contends he was completely discharged from all debt, the bankruptcy discharge has certain limitations, as described above. The bankruptcy discharge does not extinguish liens on property, and the holder of such liens may enforce its rights to the property and take certain actions in the ordinary course of business to ensure the debtor has the opportunity to avoid foreclosure by paying the debt, even though the debtor is no longer personally liable for the debt.

In considering the Motion, it is also important to focus on MicroBilt's role in this case. MicroBilt is a consumer reporting agency. It is not a creditor of the Plaintiff, and it is not a

collector of its or anyone else's debts. It also did not provide any information to a credit reporting agency, much less false or outdated information. Instead, Plaintiff alleges MicroBilt allowed PTI to access his consumer credit file, without his authorization, so that PTI could pursue collection of a discharged debt.

"[C]redit reporting is an unusually agnostic function. Its primary purpose is to share information relevant to making credit decisions, not modify the behavior of a debtor. In fact, credit reports are not even communicated to their subjects directly." Minech, 632 B.R. at 282. When a creditor requests a credit report, the inquiry may be considered either "soft" or "hard." An inquiry is "soft" when it is made as part of an ongoing relationship between the inquirer and the consumer, relates to employment screening, or will otherwise leave the consumer's credit score unaffected. Hines v. Equifax Info. Servs., LLC, 2022 WL 2841909, at *2 (E.D.N.Y. July 16, 2022). Conversely, an inquiry is "hard" when it is associated with a consumer-initiated application for credit and may therefore impact the consumer's credit score. Id.

Credit reporting is *generally* permitted notwithstanding a bankruptcy filing. Id.; Mortimer v. JP Morgan Chase Bank, Nat. Ass'n, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) ("While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the [FCRA] does so."). As explained above, a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. "Because the debt exists, its reporting alone is not a violation of the discharge injunction absent showing that the purpose or effect of the reporting was to collect the discharged debt as a personal liability of the debtor." In re Giles, 502 B.R. 892, 904 (Bankr. N.D. Ga. 2013); In re Mahoney, 368 B.R. 579, 584 (Bankr. W.D. Tex. 2007) ("mere reporting of credit information about a debtor vel non is not an 'act' to

collect a discharged debt"); <u>Montano v. First Light Fed. Credit Union (In re Montano)</u>, 488 B.R. 695, 710 (Bankr. D.N.M. 2013) (reporting discharged debt as "past due" is facially permissible and does not constitute a per se violation of the discharge injunction). For example, reporting a delinquent debt may be done to share information relevant to credit granting decisions. <u>In re Keller</u>, 568 B.R. 118, 127 (B.A.P. 9th Cir. 2017).

A creditor can request a debtor's credit report without violating the discharge injunction. In <u>In re Ho</u>, 624 B.R. 748 (Bankr. E.D.N.Y. 2021), for example, the debtor alleged a creditor made two impermissible "hard" inquiries into his credit, which had a negative effect on his credit score. The court found that, even if there was a question as to the appropriateness of the action under the FCRA, there was a "'fair ground of doubt' that creditor's pulling of the report for an existing account was a violation of the discharge order, since there is no plausible allegation before the Court that the credit inquiry was made for the purpose of collecting a discharged in personam liability." <u>Id.</u> at 755. Accordingly, the court concluded the complaint failed to plead sufficient facts to plausibly establish a violation of the discharge injunction arising from the credit report pulls.

None of this is to say that credit reporting cannot violate the discharge injunction. In certain circumstances, credit reporting *can* constitute an act to collect a debt. <u>Minech</u>, 632 B.R. at 282. Reporting false or outdated information to a credit agency in an attempt to coerce payment on a discharged debt can violate the discharge injunction, particularly where the creditor knowingly refuses to correct the report to reflect the debtor's discharge. <u>See</u> <u>In re Todt</u>, 567 B.R. 667, 680 (Bankr. D.N.H. 2017) (citations omitted); <u>Minech</u>, 632 B.R. at 286; <u>see also</u> <u>In re Anderson</u>, 641 B.R. 1, 14 (Bankr. S.D.N.Y. 2022) (repeated, unexcused refusal to correct a credit report to reflect a bankruptcy discharge subjects the violator to contempt sanctions). Credit reporting may also violate the discharge injunction where there is evidence of additional collection activity. <u>In re</u>

Trinidad, 2022 WL 3363888, at *11 (Bankr. D.P.R. Aug. 12, 2022) (Bankr. D.P.R. Aug. 12, 2022);
see e.g., In re Goodfellow, 298 B.R. 358, 362 (Bankr. N.D. Iowa 2003) (finding a violation of the
automatic stay and discharge injunction based on reporting of the debtor's debt as "past due" in
addition to its collection letters and threatening phone calls to debtor attempting to collect the
debt); In re DiBattista, 615 B.R. 31, 43 (S.D.N.Y. 2020) (misleading credit reporting coupled with
other communications suggested creditor was in fact trying to collect a debt). In sum, while credit
reporting is generally permissible, it may violate the discharge injunction if its objective effect is
to pressure the debtor to pay a discharged debt. Montano, 488 B.R. at 710.

  Here, Plaintiff alleges MicroBilt allowed PTI to access his consumer credit file so that PTI
could pursue collection of a discharged debt. When Plaintiff received his bankruptcy discharge,
his personal liability for the Tradd Mortgage Debt and Tradd HELOC were discharged. But the
Tradd Mortgage Debt and Tradd HELOC continued to exist. Providing a consumer credit file, on
its own in this circumstance, does not violate the discharge injunction. Giles, 502 B.R. at 904;
Montano, 488 B.R. at 710 (Bankr. D.N.M. 2013). Plaintiff does not allege MicroBilt provided or
reported any information, much less false or outdated information, in an attempt to coerce payment
on a discharged debt. Plaintiff does not allege MicroBilt engaged in any act to collect a debt.
Notably, the complaint alleges it was PTI —not MicroBilt—that inquired about Plaintiff's credit.
Even if PTI provided incorrect information to MicroBilt, there is no allegation it knew the
information was incorrect. The complaint contains no plausible allegation MicroBilt's credit
inquiry was made for the purpose of collecting a discharged debt from Plaintiff. Thus, the
allegations do not plausibly state the objective effect of MicroBilt providing access to the credit
report was to pressure Plaintiff into paying a discharged debt.

  Further, the party that violated the discharge injunction must have acted with knowledge

of it. Cowan, 2020 WL 7330049, at *6. MicroBilt contends it did not have knowledge of Plaintiff's discharge until after the second inquiry, when Plaintiff contacted it by letter, and Plaintiff does not allege MicroBilt was aware of his bankruptcy case. Plaintiff contends MicroBilt should have searched to see if Plaintiff had received a bankruptcy discharge. But an investigation is not required. See In re Gunter, 389 B.R. 67, 74 (Bankr. S.D. Ohio 2008) (firm not required to check PACER or any other source to determine whether debtor had filed a bankruptcy petition and it would be unreasonable to expect such). "In order for a party to be held in civil contempt for violating a court order, the party must have actual knowledge of that order." In re Waswick, 212 B.R. 350, 353 (Bankr. D.N.D. 1997); In re Kikut, 2018 WL 2422418, at *1 (Bankr. W.D. Ark. Apr. 9, 2018).

Because the complaint does not allege MicroBilt knew of the discharge injunction, it did not act with the requisite knowledge. Accordingly, MicroBilt took the actions complained of when there was a fair ground of doubt the discharge order barred MicroBilt's conduct. Dismissal for failure to state a claim of violating the discharge injunction as to MicroBilt is appropriate.

### iv.  **Punitive Damages**

Plaintiff seeks punitive damages. Where a complaint fails to state a claim for relief, related claims for damages and punitive damages are also subject to dismissal. See e.g., Owens v. Bank of Am. N.A., 2015 WL 12507425 *8 (N.D. Ga. Dec. 4, 2015); Puissant v. Bank of Am. Home Loan Serv., 2013 WL 6383102 at *6 (M.D. Ga. Dec. 5, 2013). Because Plaintiff fails to state a plausible claim for violations of the discharge injunction as to MicroBilt, his related claim for punitive damages also fails.

14

### v.  Effect of Dismissal

MicroBilt asks the Court to dismiss Plaintiff's claim against it with prejudice. While the Court has ruled dismissal of Plaintiff's discharge injunction violation claim as to MicroBilt is appropriate pursuant to Rule 12(b)(6), the presumption is that such dismissals are without prejudice. "[A] dismissal with prejudice is an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the [ . . .] court specifically finds that lesser sanctions would not suffice." Dinardo v. Palm Beach County Cir. Ct. Judge, 199 F. App'x 731, 735 (11th Cir. 2006) (internal quotations and citations omitted) (emphasis in original). The extreme circumstances necessary for dismissal with prejudice on Rule 12(b)(6) grounds are not present in this case. Accordingly, the dismissal of MicroBilt is without prejudice.

**IT IS ORDERED** that the Motion is **GRANTED** as provided herein.

**IT IS FURTHER ORDERED** that Plaintiff's claim MicroBilt violated the discharge injunction is **DISMISSED WITHOUT PREJUDICE**.

**END OF DOCUMENT**

**Distribution List**

Emmanuel O Ohai
863 Flat Shoals Rd. SE
C #155
Conyers, GA 30094

Megan Poitevint Mitchell
Arnall Golden Gregory LLP
171 17th Street NW, Ste 2100
Atlanta, GA 30363