

**IT IS ORDERED as set forth below:**

**Date: August 23, 2023**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-65475-WLH |
| EMMANUEL OHAI, | CHAPTER 7 |
| Debtor. | |
| EMMANUEL OHAI, | ADVERSARY PROCEEDING NO. 23-5041-WLH |
| Plaintiff, | |
| v. | |
| DELTA COMMUNITY CREDIT UNION, PNC BANK NATIONAL ASSOCIATION, INC., DEAN ENGLE & PARK TREE INVESTMENTS, LLC, PARK TREE 20 INVESTMENTS, LLC, FCI LENDER SERVICES, INC., DANIEL I. SINGER & SINGER LAW GROUP, PHILLIP L. JAUREGUI D/B/A JAUREGUI & LINDSAY LLC, MICHAEL W. LINDSEY D/B/A, JAUREGUI & LINDSEY, LLC, MICROBILT CORPORATION, | |
| Defendants. | |

### ORDER ON THE ENGLE DEFENDANTS' MOTION TO DISMISS

1

**THIS MATTER** is before the Court on the Motion to Dismiss filed by Dean Engle ("Engle"), Park Tree Investments, LLC ("PTI"), Park Tree 20 Investments, LLC ("PTI20"), FCI Lender Services, Inc. ("FCI"), Phillip L. Jauregui d/b/a Jauregui & Lindsey and Michael W. Lindsey d/b/a Jauregui & Lindsey, LLC ("J&L") (collectively the "Engle Defendants") (Doc. No. 6), and Plaintiff's Response thereto (Doc. No. 10). The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the claim of violating the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O). See In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (it is axiomatic that this Court has subject matter jurisdiction to consider such core matters); In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009).

I.    **FACTS**

Plaintiff and his now ex-wife purchased their primary residence at 2715 Tradd Court, Snellville, Georgia (the "Tradd Property") in April 2006 and executed a note and security deed in favor of Delta Community Credit Union ("Delta") (the "Tradd Mortgage Loan"). In March 2008, Plaintiff and his now ex-wife obtained a home equity loan in the amount of $46,000 from Delta, secured by a second security deed (the "Tradd HELOC"). Plaintiff and his now ex-wife defaulted on the Tradd HELOC in 2010.

On June 20, 2012, Plaintiff and his now ex-wife filed a petition under Chapter 7 of the Bankruptcy Code. On Schedule D, Delta was listed as holding two secured claims: one for $98,352.00 and another for $39,615.00, both secured by the Tradd Property. The Chapter 7 Trustee, Janet G. Watts, conducted the 341 meeting of creditors on July 17, 2012, and filed a Report of No Distribution on August 16, 2012. The bankruptcy case was closed and discharged on

October 5, 2012 (Bankr. Doc. No. 14).[1]

Plaintiff continued to live in the Tradd Property. Delta allegedly first sold the Tradd HELOC in February 2012 (pre-petition). The Tradd HELOC was then sold to PTI20 by May 23, 2017. PTI was identified as the servicer. PTI transferred servicing of the Tradd HELOC in May 2018 to FCI. Upon receipt of the notice that FCI was the servicer, Plaintiff sent a letter to FCI pursuant to 15 U.S.C. § 1692(f) demanding validation and verification of the debt. FCI and PTI20 engaged the Singer Law Group ("Singer") to respond to the inquiry and in connection with foreclosure proceedings against the Tradd Property. Singer sent two letters dated July 11, 2018 and July 16, 2018 to Plaintiff, as set out below. A foreclosure sale was eventually scheduled for September 3, 2019.

On January 28, 2019 and February 3, 2020, MicroBilt obtained Plaintiff's consumer reports from Experian and/or Equifax (Doc. No. 1, Ex Y). Plaintiff disputed the inquiries, and MicroBilt informed Plaintiff the reports were pulled at the request of PTI. When PTI failed to respond to MicroBilt's request for verification of authority, MicroBilt removed the inquiries.

### a.  District Court Litigation

On May 26, 2020, Plaintiff filed a complaint in the United States District Court for the Northern District of Georgia, *Ohai v. Delta Community Credit Union et al* Civil Action No. 1:20-cv-02220-SCJ-JEM against Engle, FCI, J&L, PTI, and others. PTI20 was not named as a defendant. Plaintiff alleged violations of several consumer protection statutes (the Fair Credit Reporting Act ("FCRA"), Equal Credit Opportunity Act ("ECOA"), Fair Debt Collection Practices Act ("FDCPA"), Georgia Fair Business Practices Act ("GFBPA")), invasion of privacy, and

---

[1] In the Motion, the Engle Defendants argue the Court should dismiss the complaint because Plaintiff's bankruptcy case was closed 10 years ago. While reopening is not required, the Court nevertheless entered an order on July 14, 2023 reopening the bankruptcy case, thus mooting the argument about whether the Court should reopen the case.

"defamation—libel". The original complaint did not allege a violation of the discharge injunction. Plaintiff filed an amended complaint (District Court Doc. No. 11) on June 15, 2020. It included a claim that Engle, FCI, J&L, and PTI violated the discharge injunction.

Plaintiff sought to further amend his complaint and filed a Motion for Leave to File the Second Amended Complaint (District Court Doc. No. 108). The court ultimately denied Plaintiff's request to amend the complaint (District Court Doc. No. 149), but the court granted the motion "to the extent that Plaintiff seeks to dismiss his claim for a bankruptcy discharge injunction." Accordingly, the court ruled the First Amended Complaint (District Court Doc. No. 11)—without claim XI regarding the discharge injunction—was the operative complaint (District Court Doc. No. 149 at 45-46.) At this point, then, the discharge injunction was not at issue in the District Court.

Engle, FCI, J&L, and PTI filed motions to dismiss the operative complaint (PTI20 was not a named defendant). The District Court dismissed the complaint against Engle for insufficient service of process (District Court Doc. No. 235). The District Court dismissed the complaint against FCI on the basis that the FDCPA claim was time barred (District Court Doc. No. 236). The District Court dismissed the defamation-false light/invasion of privacy and GFPRA claims against J&L, but retained the claim that J&L violated the FDCPA by sending Plaintiff communications in 2019. J&L subsequently filed a motion for summary judgment, which the Court granted on May 4, 2023 on the basis that J&L was not a debt collector subject to the FDCPA (District Court Doc. No. 291). There are no remaining claims against Engle, FCI, and J&L pending in the District Court.

The District Court initially dismissed the complaint against PTI on the basis that PTI was a note owner and thus not subject to the FDCPA. The District Court later vacated its ruling after determining that PTI was a loan servicing agent and PTI20 was the owner of the subject note.

4

(District Court Doc. No. 293). The FDCPA claim against PTI remains pending, but it has been stayed pending resolution of this adversary proceeding. Id.

  **b.  Adversary Proceeding**

On March 29, 2023, Plaintiff filed the complaint against Engle, PTI, PTI20, FCI, J&L, and Jauregui, and Lindsey, as well as his former mortgage holders, certain debt collectors, and a consumer reporting agency. The complaint relates to two separate properties, but the actions of the Engle Defendants only relate to the Tradd Property. The allegations as to each of the Engle Defendants are as follows.

  **i.  PTI**

PTI is a loan servicer. On June 22, 2017, PTI sent Plaintiff a "Borrower Welcome Letter" stating "Park Tree Investments, LLC is your Servicing Agent and is servicing your Promissory Note on behalf of your Lender/Creditor, Park Tree Investments 20, LLC." The second paragraph of the letter was labeled "**IMPORTANT BANKRUPTCY INFORMATION**" and stated in bold, capital letters, "**IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.**" The letter went on to state the unpaid principal balance on the note was $40,395. The second to last paragraph of the letter stated, "**IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT Park Tree Investments LLC as Servicing Agent for your Creditor IS ATTEMPTING TO COLLECT A DEBT and ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**"

Starting in July 2017, PTI sent Plaintiff monthly loan statements. On August 31, 2017, PTI

sent Plaintiff a monthly statement stating the amount due was $30,276.53. The statement said, "You are late on your loan payments. Failure to bring your loan current may result in fees and legal action. As of 8/31/2017, you are 2,148 days delinquent on your loan." The statement included a return payment coupon with instructions to "Make check Payable to Park Tree Investments 20." The August 31, 2017 statement did not include a bankruptcy disclaimer.

On September 30, 2017, PTI sent Plaintiff a monthly statement stating the amount due was $30,702.96. The statement said, "You are late on your loan payments. Failure to bring your loan current may result in fees and legal action. As of 9/30/2017, you are 2,178 days delinquent on your loan." The statement included a return payment coupon with instructions to "Make check Payable to Park Tree Investments 20." The September 30, 2017 statement did not include a bankruptcy disclaimer.

On October 31, 2017, PTI sent Plaintiff a monthly statement stating the amount due was $31,129.39. The statement said, "You are late on your loan payments. Failure to bring your loan current may result in fees and legal action. As of 10/31/2017, you are 2,209 days delinquent on your loan." The statement included a return payment coupon with instructions to "Make check Payable to Park Tree Investments 20." The October 31, 2017 statement did not include a bankruptcy disclaimer. Plaintiff alleges PTI continued to send him monthly statements.

In May 2018, PTI transferred its servicing rights to FCI. A "Borrower Welcome Letter," dated May 15, 2018, was sent to Plaintiff stating FCI was the new servicing agent for PTI20 authorized to process and collect scheduled payments.

In 2019 and again in 2020, PTI requested MicroBilt, a consumer reporting agency, pull Plaintiff's credit report. On January 28, 2019 and February 3, 2020, MicroBilt obtained Plaintiff's consumer reports from Experian and/or Equifax (Doc. No. 1, Ex Y). Plaintiff disputed the

inquiries. MicroBilt sent PTI a request for verification of authority. PTI did not respond to MicroBilt's request to verify PTI's authority to request a credit pull. (Doc. No. 1, Ex. Y).

### ii. **FCI**

FCI is a loan servicer. PTI transferred service of Plaintiff's loan held by PTI20 to FCI. A "Borrower Welcome Letter," dated May 15, 2018, was sent to Plaintiff stating FCI was the new servicing agent for PTI20 authorized to process and collect scheduled payments. The letter included a paragraph in the center stating, in bold, capital letters, "**IMPORTANT BANKRUPTCY INFORMATION: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.**" The end of the letter included another paragraph in bold type stating, "**IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**"

In response, Plaintiff sent a letter to FCI demanding validation and verification of the alleged debt transferred to it. On July 11, 2018, Plaintiff received a letter from Singer, on behalf of PTI20 and FCI, stating:

> Please be advised that this office was asked by FCI Lender Services and Park Tree Investments 20, LLC (the noteholder) to respond to your correspondence dated June 8, 2018 regarding the above-referenced loan account. Although you do not appear to be disputing the validity of the debt, your letter demands verification of the subject debt pursuant to 15 U.S.C. Section 1692(f).

> Accordingly, enclosed herein please find the following documents:

> Copy of the subject original Note;

Copy of the subject recorded Mortgage; and

Reinstatement quote and payoff quote evidence the balances owed under your owed (sic) and a description of how our client's servicer arrived at the current payoff and reinstatement amounts.

I believe the enclosed sufficient (sic) responds to inquiry. If not, please let me know. Also, should you wish to learn more about the home retention options available to you, please contact Jennifer Zartman at 866.290.8795.

The second page of the letter included a "NOTICE PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT." The notice stated, "if you have received a discharge of this debt *in* bankruptcy or *are currently in* a bankruptcy case, this notice is not intended as an attempt to collect a debt, and however we have a security interest in the property and will only exercise our rights as against the property."

On July 16, 2018, Singer sent Plaintiff a second letter on behalf of PTI20 and FCI stating, "You are receiving this notice because your second mortgage is in default, and your property is in jeopardy of being referred to foreclosure." The letter identified Park Tree Investments 20, LLC as the noteholder. The letter provided Plaintiff an itemized account summary as of August 17, 2018, stating the amount needed to reinstate or bring the account current was $36,740.07. The letter explained, "[i]f the default is not cured on or before August 17, 2018 the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure will be initiated at that time. The failure to cure the default may result in the foreclosure and sale of your property." The July 16, 2018 letter did not include a statement stating it was not an attempt to collect personally, but there is nothing in the letter saying or indicating personal liability.

Plaintiff alleges FCI sent statements to him from March 14, 2019 through March 14, 2021, each showing an amount due and due date and including a return mail envelope. Each of the

8

statements were labeled as a "Delinquency Notice." Every statement from FCI had a detachable payment portion stating, **"PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND  RETAIN THE TOP PORTION FOR YOUR RECORDS."** The statements are not attached to the complaint.

### iii.  __PTI20__

PTI20 acquired the Tradd HELOC. On May 23, 2017, a letter titled "Notice of Assignment, Sale or Transfer of Servicing Rights" was sent from Sussex Insurance Company to Plaintiff and his now ex-wife stating:

> The servicing of your mortgage loan is being transferred, effective June 7, 2017. This means that after this date, a new Servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. Sussex Insurance Company (f/k/a Companion Property & Casualty Insurance Company) is now collecting your payments. Sussex Insurance Company (f/k/a Companion Property & Casualty Insurance Company) will stop accepting payments received from you on June 7, 2017. Park Tree Investments 20, LLC will collect your payments going forward. Your new Servicer will start accepting payments received from you on June 7, 2017
>
> Send all payments due on or after June 7, 2017 to Park Tree Investment 20, LLC.

The exhibit to the complaint only includes the first page of the letter.

On May 27, 2017 PTI20 sent Plaintiff a letter entitled "New Investor—Truth in Lending Act Disclosure." The letter notified Plaintiff that PTI20 was the new owner of his mortgage loan. A second page showed the current servicer (Sussex Insurance Company) would be changed to a new servicer, PTI20.

On June 22, 2017, PTI sent a "Borrower Welcome Letter," described above, to Plaintiff. Upon receiving these letters, Plaintiff sent PTI20 a "cease and desist letter" requesting debt collection activity cease. On July 12, 2017, PTI20 sent Plaintiff a letter regarding his "Cease and Desist Request" stating, "Park Tree Investments 20, LLC is in receipt of your Cease and Desist

request. Your file has been noted and you will not receive collection communications." A paragraph at the bottom of the letter stated,

> Please be advised that Park Tree Investments is a debt collector, and information you provide to us may be used for that purpose. However, if you have filed for bankruptcy, we will abide by any applicable automatic stay, modification or discharge. Further, if you filed Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt any act to collect, recover or offset the discharged debt es (sic) your personal liability.

PTI, as servicer for the loan owned by PTI20, sent Plaintiff monthly statements starting around July 2017. These statements are described specifically above, dated August 31, 2017; September 30, 2017; and October 31, 2017. None of them included a bankruptcy disclosure.

In May 2018, FCI began servicing PTI20's loan. Plaintiff alleges FCI sent Plaintiff monthly mortgage statements stating an amount due and due date. The statements are not attached to the complaint.

On July 11, 2018, Plaintiff received a letter from Singer, on behalf of PTI20 and FCI, responding to his correspondence and providing information regarding the Tradd HELOC. The letter is more specifically described above.

On July 16, 2018, Singer sent Plaintiff a second letter on behalf of FCI and PTI20 stating the Tradd HELOC was in default and the Tradd Property was in jeopardy of being referred to foreclosure. The letter is more specifically described above.

In 2019 and again in 2020, PTI, on behalf of PTI20, requested MicroBilt pull Plaintiff's credit report, as more specifically described above.

### iv.  **Engle**

Engle is the owner of PTI. In the complaint, Plaintiff defines "PTI" to include Engle individually and on behalf of Park Tree Investments, LLC, so all the allegations regarding PTI

include Engle. Plaintiff specifically alleges Engle directed PTI to send him the letter dated May 23, 2017, which is described above.

### v.  <u>J&L</u>

J&L is a law firm that was retained in connection with foreclosure proceedings, and Jauregui and Lindsey are individual attorneys. There are no specific allegations as to J&L, Jauregui, or Lindsey in the complaint.

## II.   DISMISSAL FOR LACK OF PROPER SERVICE

The Engle Defendants contend that dismissal is appropriate because they have not been properly served.

### a.  <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

The Supreme Court has held that "before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." <u>Omni Capital Intern. v. Rudolf Wolff & Co., Ltd.</u>, 484 U.S. 97, 104 (1987). In an adversary proceeding, a plaintiff must serve on a defendant the summons, along with a copy of the complaint, and file proof of service of the same, in accordance with the Federal Rules of Bankruptcy Procedure. Pursuant to Bankruptcy Rule 7004(e), service must be made within 7 days after the issuance of the summons. If service is not made within that time period, service is insufficient and the Court may not exercise personal jurisdiction over the defendant.

Bankruptcy Rule 7004 governs service of the summons and the complaint in an adversary proceeding and authorizes both personal service under Rule 7004(a) and mail service under Rule 7004(b). Rule 7004(a) states that Rule 4(e), Federal Rules of Civil Procedure — which permits service by personal delivery of the summons and the complaint — "applies in adversary proceedings." And Rule 7004(b) states that "in addition to the methods of service authorized by

Rule 4(e)" a plaintiff can serve the debtor "by mailing a copy of the summons and the complaint"

to the debtor. <u>See</u> <u>In re Cutuli</u>, 389 F. Supp. 3d 1051, 1055 (M.D. Fla. 2019).

A plaintiff must serve a summons on "a domestic or foreign corporation or upon a

partnership or other unincorporated association, by mailing a copy of the summons and complaint

to the attention of an officer, a managing or general agent, or to any other agent authorized by

appointment or by law to receive service of process and, if the agent is one authorized by statute

to receive service and the statute so requires, by also mailing a copy to the defendant." Fed. R.

Bankr. P. 7004(b)(3). Federal Rule of Civil Procedure 4(h)(1)(B) provides a domestic corporation

or partnership or other unincorporated association can be served "by delivering a copy of the

summons and of the complaint to an officer, a managing or general agent, or any other agent

authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B).

A party must strictly comply with Bankruptcy Rule 7004 in effectuating service of process.

<u>See</u> <u>PNC Mortgage v. Rhiel</u>, 2011 WL 1043949, at *5 (S.D. Ohio Mar. 18, 2011) (holding that the

bank's actual notice of the adversary proceeding did not cure the defect in service); <u>see also</u> <u>Walker</u>

<u>v. U.S. Bank N.A. (In re Walker)</u>, 2015 WL 728691 (Bankr. N.D. Ga. Jan. 15, 2015). Although

<i>pro se</i> pleadings are held to a less stringent standard than pleadings drafted by attorneys and are

liberally construed, <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per

curiam), a <i>pro se</i> litigant must still follow procedural rules. <u>See</u> <u>Albra v. Advan, Inc.</u>, 490 F.3d

826, 829 (11th Cir. 2007) (per curiam) (affirming district court order dismissing complaint where

<i>pro se</i> plaintiff failed to properly effect service on the defendant). Without proper service, a

defendant cannot be said to have failed to plead or otherwise defend. <u>See</u> <u>Tompkins & Assocs. v.</u>

<u>Mack (In re Mack)</u>, 2004 WL 5848040 (Bankr. N.D. Ga. Mar. 12, 2004) (finding that defendant

was not in default where service was insufficient and denying plaintiff's motion for default

judgment); see also Lindsay v. Beggins (In re Lindsay), 2018 WL 1508552 (Bankr. N.D. Ga. Mar. 26, 2018).

Federal Rule of Bankruptcy Procedure 7004(a) further provides that the summons and complaint must be served within the time period prescribed in Rule 4(m). Rule 4(m) in turn states that service of the summons and complaint must be made within 90 days after the complaint is filed; if service is not made within that time period, the action must be dismissed without prejudice as to the non-served defendant, unless plaintiff can show good cause why such service was not made. Fed. R. Civ. P. 4(m). A plaintiff must demonstrate a showing of diligence and a reasonable effort to effect service. Sullivan v. Hall (In re Hall), 222 B.R. 275, 279 (Bankr. E.D. Va. 1998). A pro se litigant must still follow these procedural rules. Tannenbaum, 148 F.3d at 1263.

A court may "exercise its discretion to deny a motion to dismiss for lack of proper service and permit a plaintiff the opportunity to effectuate proper service, especially when the [ninety-day] period provided by Rule 4(m) for service of a complaint and summons has not yet expired." Houchins v. Wells Fargo Bank, N.A. (In re Houchins), 2015 WL 730436, at *2 (Bankr. N.D. Ga. Feb. 3, 2015) (Drake, J.); Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(a). Courts generally do not extend time for service of process where the action lacks substantive merit on other grounds and allowing additional time for service would be futile. See e.g., Lunnon v. United States, 2020 WL 1329821, at *4 (D.N.M. Mar. 23, 2020), aff'd, 2022 WL 17729999 (10th Cir. Dec. 16, 2022).

**b.  Application to Engle Defendants**

The complaint was filed on March 29, 2023. A summons was issued on March 30, 2023. An alias summons was issued April 7, 2023. A certificate of service (Doc. No. 5) was filed on April 18, 2023.

13

### i. **PTI**

The certificate of service indicates PTI was personally served c/o Registered Agent CT Corp., 289 Culver Street, Lawrenceville, GA 30046 on April 10, 2023 (Doc. No. 5 ex. 5). This is the correct registered agent and address for Park Tree Investments, LLC, as identified on the Georgia Secretary of State's website, and therefore is correct for PTI.

### ii. **PTI20**

The certificate of service states "Park Tree 20 Investments, LLC" was served c/o CSC, 2 Sun Court, Suite 400, Peachtree Corners, GA on April 11, 2023 (Doc. No. 5 ex. 6). PTI20 contends it was improperly named and has not been validly served because PTI20 (Park Tree Investments 20, LLC) is a different entity than the one served ("Park Tree <u>Properties</u> 20, LLC"). The correct registered agent for Park Tree Properties 20, LLC was served. No entity under the name Park Tree Investments 20, LLC appears in the Georgia Secretary of State's database. As reflected in the California Secretary of State and Delaware Secretary of State databases, PTI20 is a limited liability company formed in Delaware. Its registered agent (The Corporation Company, 251 Little Falls Drive, Wilmington, DE 19808) should have been served.

The 90-day period for service of the complaint and summons has expired. Plaintiff had until June 27, 2023 to properly serve PTI20 with the summons and complaint. Plaintiff, however, has demonstrated diligence and a reasonable effort to effect service on PTI20. He searched the Georgia Secretary of State's records to identify the proper person to be served, and Plaintiff stated that, if service was not complete, he was "ready, willing, and able" to serve the correct entity. PTI20 never identified the proper agent for service. Further, as explained below, the complaint states a plausible claim for relief against PTI20. Accordingly, the Court will deny the Motion for lack of proper service and permit Plaintiff the opportunity to effectuate proper service on PTI20.

Plaintiff must obtain an alias summons within 10 days of the date hereof and serve PTI20 via its registered agent at The Corporation Company, 251 Little Falls Drive, Wilmington, DE 19808. Plaintiff must serve the summons and complaint within 7 days of issuance of the summons in accordance with Bankruptcy Rule 7004(e), and the Court extends the time to complete service under Federal Rule of Civil Procedure 4(m) to 30 days from the date hereof.

### iii.  **FCI**

The certificate of service states FCI was personally served by a process server c/o Registered Agent Cogency Global, Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076 on April 11, 2023 (Doc. No. 5 ex. 3). This is the name and address for the registered agent identified on the Georgia Secretary of State's online database of agents for service of process. Accordingly, the complaint and summons were properly served on FCI.

### iv.  **J&L**

Per the certificate of service, Jauregui d/b/a Jauregui & Lindsey LLC was served c/o registered agent Larry Johnson, 138 Hammond Drive, Suite B, Atlanta, GA 30328 on April 11, 2023 (Doc. No. 5 ex. 7). Larry Johnson was properly served as the registered agent for Jauregui & Lindsey, LLC.

Reviewing the certificate of service filed by Plaintiff, it appears FCI, PTI, and J&L are all corporate entities that were personally served by a process server via the proper registered agents in accordance with Federal Rule of Civil Procedure 4(h)(1)(B). Accordingly, it appears that service was proper on FCI, PTI, and J&L and dismissal for lack of proper service is not appropriate.

### v.  **Engle, Jauregui, and Lindsey**

Service on the individual Defendants (Engle, Jauregui, and Lindsey) is a different story. The certificate of service indicates each of these individuals was served together with their

respective corporate entities via the registered agents authorized to receive service for the corporate entities. The complaint and summons were not addressed to their residences or their regular business addresses as required by Fed. R. Bankr. P. 7004(b)(1), delivered to the individuals personally, or left at the individuals' dwelling or usual place of abode as required by Fed. R. Civ. P. 4(e)(2)(A) & (B). Fed. R. Civ. P. 4(e)(2)(C) does provide for service on an individual by delivering a copy to the summons and complaint to an agent authorized or appointed or by law to receive service of process. But it is not evident that the registered agent for Park Tree is authorized to receive service for Engle individually or the registered agent for Jauregui & Lindsey is also authorized to receive service of process for Jauregui and Lindsey individually. Defendants contend that although counsel was personally served, counsel did not represent Jauregui and Lindsey at the time and had no authority to accept or receive service on their behalf (Doc. No. 6). Accordingly, the Court finds service on the individual Defendants Engle, Jauregui, and Lindsey, was insufficient.

The 90-day period for service of the complaint and summons has expired. Plaintiff had until June 27, 2023 to properly serve the Defendants with the summons and complaint. As explained below, the complaint fails to state a plausible claim for relief against Engle, Jauregui, and Lindsey. Accordingly, allowing Plaintiff additional time to properly serve them would be futile. Dismissal for lack of proper service as to Engle, Jauregui, and Lindsey in their individual capacities is appropriate.

### III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### a.   Motion to Dismiss for Failure to State a Claim

The Engle Defendants seek dismissal of the complaint pursuant to Federal Rule of Bankruptcy Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012,

for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

While the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678, the purpose of a motion to dismiss is not to resolve disputed facts or decide the merits of a case. Rather, the purpose of a motion to dismiss is to ensure that the plaintiff has provided notice of the grounds which entitle him to relief. Twombly, 550 U.S. at 561. The facts alleged must be taken as true, and dismissal is inappropriate merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Official Comm. of Unsecured Creditors of Tousa, Inc. v. Technical Olympic, S.A. (In re Tousa), 437 B.R. 447, 452 (Bankr. S.D. Fla. 2010) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).

### b. **Discharge Injunction**

Section 524 governs a debtor's discharge in bankruptcy.  It provides that a bankruptcy discharge, among other things:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). "The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as: letters, phone calls, threats of criminal proceedings or other adverse actions

brought about with the purpose of debt repayment." In re McConnie Navarro, 563 B.R. 127, 141 (Bankr. D.P.R. 2017) (citation omitted).

Pursuant to section 105, a bankruptcy court may enforce the discharge injunction and "order damages if the circumstances so require." Id. Sanctions for violations of the discharge injunction are in the nature of civil contempt. Id. The Supreme Court has held that a bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019). In Taggart, the Supreme Court explained that means "there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." Id. at 1799. To meet this standard, the party that violated the discharge injunction must have acted with knowledge of it. In re Cowan, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020) (citing In re Milani, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020)). Further, to discern whether an act is one to collect a debt, courts consider whether the conduct objectively had the practical effect of improperly coercing payment of a discharged debt. In re Minech, 632 B.R. 274, 282 (Bankr. W.D. Pa. 2021); Roth, 935 F.3d at 1278–79 (emphasis in original) (the court must determine "whether the *objective* effect of [the act] . . . is to pressure a debtor to repay a discharged debt"). "In this regard, a subjective good faith belief that the action taken does not violate the discharge injunction is not sufficient to avoid sanctions if such a belief is not objectively reasonable." Milani, 2020 WL 5551990, at *5.

The discharge injunction, however, has limits. A Chapter 7 discharge releases the debtor from all debts that arose before the petition date, but it only extinguishes "personal liability of the debtor." 11 U.S.C. §§ 727(b), 524(a)(2). The discharge does not affect a secured creditor's interest in real property, and a creditor's right to foreclose on a mortgage survives the bankruptcy. Johnson

18

v. Home State Bank, 501 U.S. 78, 83 (1991); see also Farrey v. Sanderfoot, 500 U.S. 291, 297

(1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy"); Bentley v. OneMain

Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) ("The concept

that a lien 'rides through' bankruptcy is axiomatic."). "[A]fter the automatic stay terminates as to

the property, a secured creditor may take any appropriate action to enforce a valid lien surviving

the discharge, as long as the creditor does not pursue in personam relief against the debtor." In re

Best, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (citation omitted).

Section 524 does not bar all contact with a discharged debtor. Indeed, section 524(j)

provides an exception to the discharge injunction for creditors who hold claims secured by the

debtor's principal residence as long as the creditor's acts are in the ordinary course of business

between the debtor and the creditor and limited to seeking payments in lieu of in rem relief (i.e.

foreclosure). This section provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that
> is the holder of a secured claim, if—
>> (1) such creditor retains a security interest in real property that is the
>> principal residence of the debtor;
>> (2) such act is in the ordinary course of business between the creditor
>> and the debtor; and
>> (3) such act is limited to seeking or obtaining periodic payments
>> associated with a valid security interest in lieu of pursuit of in rem
>> relief to enforce the lien.

11 U.S.C. § 524(j). All three requirements must be met for the exception to apply. In re Lemieux,

520 B.R. 361, 368 (Bankr. D. Mass. 2014). "The law thus attempts to create a safe harbor for a

mortgage servicer to continue to send advices of and payment books to the debtor even if the

personal debt has been discharged." McConnie Navarro, 563 B.R. at 142 (citation omitted). The

purpose of section 524(j) is to permit certain post-discharge actions of a secured creditor when the

debtor remains in his or her home. See In re Whitaker, 2013 WL 2467932, at *8-9 (Bankr. E.D.

Tenn. June 7, 2013); In re Steinberg, 447 B.R. 355, 359 (Bankr. S.D. Fla. 2011). As one court explained, the exception in section 524(j) "makes sense" because it "would allow a secured creditor to remain in contact with a debtor who was living in the real property as his principal residence, send communications in the regular course of business, and explore the possibility of the debtor retaining his principal residence—i.e., collecting payments in lieu of foreclosure." Bibolotti v. American Home Mortgage Servicing, Inc., 2013 WL 2147949, *9 (E.D. Tex. May 15, 2013).

The distinction between communications that improperly seek to impose personal liability on a debtor and those that merely seek periodic payments in lieu of foreclosure is dependent, to a great extent, on the content of the correspondence. In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019). The court must determine "whether the *objective* effect of [a communication] is to pressure a debtor to repay a discharged debt". Roth, 935 F.3d at 1278–79 (emphasis in original). "[T]he line between forceful negotiation and improper coercion is not always clear." McConnie Navarro, 563 B.R. at 143 (citation omitted). "An action is considered coercive when it is 'tantamount to a threat' . . . or places the debtor 'between a rock and a hard place.'" Id. "[C]ourts consider the 'immediateness' of the threatened action and the context in which this action took place." Id.

"Although not entirely dispositive, inclusion of 'clear and prominent disclaimers'" informing discharged debtors that the creditor is 'solely seeking payment as a substitute for pursuing [its] in rem rights' is an effective way for the creditor to identify the purposes of the communications and to ensure that violation of the discharge injunction does not occur." Cantrell, 605 B.R. at 856; see also Best, 540 B.R. at 11 (existence of disclaimer language, however, will not insulate an otherwise improper demand for payment). Accordingly, the existence of disclaimer

language in post-discharge communications with debtors is often a significant factor in determining whether the communications violate the discharge injunction. Thomas v. Seterus Inc. (In re Thomas), 554 B.R. 512, 520-21 (Bankr. M.D. Ala. 2016). The inclusion of an "amount due," "due date," and statements about an escrow balance does not diminish the effect of a prominent, clear, and broadly worded disclaimer. Roth, 935 F.3d at 1276.

Additionally, informational responses to inquiries from a debtor that do not make a demand for payment do not violate the discharge injunction. In re Mele, 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013). In Cantrell, 605 B.R. 841, for example, the debtor received several letters sent in response to inquiries he had made and contact he had initiated. All but one of the letters included disclaimer language noting the bankruptcy and the discharge of the debtor's personal liability on the debt. The court concluded that, even in the absence of disclaimer language, the communications could not be construed as seeking to collect the mortgage debt as a personal liability of the debtor. Id. at 857.

c. **Application to the Allegations**

Plaintiff alleges that all the Engle Defendants attempted to collect discharged and/or time-barred debts from Plaintiff.[2] In analyzing the sufficiency of the allegations, it is important to understand the scope of a bankruptcy discharge. While Plaintiff contends he was completely discharged from all debt, the bankruptcy discharge has certain limitations, as described above. The bankruptcy discharge does not extinguish liens on property, and the holder of such liens may enforce its rights to the property and take certain actions in the ordinary course of business to

---

[2] The Engle Defendants contend Plaintiff's claim is time barred by Georgia law which provides "[a]ctions upon bonds or other instruments under seal shall be brought within 20 years after the right of action has accrued" and "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable." O.C.G.A. §§ 9-3-23 and 9-3-24. These sections are inapplicable here. Plaintiff is not seeking relief based on a bond or other instrument under seal or a contract. Rather, Plaintiff claims the Engle Defendants violated the discharge injunction. There are no statutory time limits on filing a claim for a violation of the discharge injunction. In re Morris, 570 B.R. 708, 712 (Bankr. M.D. Pa. 2017).

ensure the debtor has the opportunity to avoid foreclosure by paying the debt, even though the debtor is no longer personally liable for the debt.

Section 524 does not bar a creditor from communicating with a debtor about a debt or in response to inquiries from the debtor. The Court must consider all the contents of the communication and the context in which the communication is sent. McConnie Navarro, 563 B.R. at 143. Courts commonly find communications sent in response to a request for validation of debt are permissible. In Cantrell, for example, the court concluded that letters sent to the debtor in response to inquiries he had made, and contact he had initiated, could not be construed as seeking to collect the mortgage debt as a personal liability of the debtor. 605 B.R. at 857; see also In re Mele, 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013); In re Henriquez, 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015) (informational letters did not have the objective effect of pressuring the debtors to pay the discharged debt). Similarly, in In re Lett, 635 B.R. 713 (Bankr. N.D. Ga. 2022), the court found a "Validation of Debt Notice" that explained the sender's duties as servicing agent, provided a breakdown of the debt, and advised plaintiff of her rights to dispute the validity of the debt was informational in nature. The last line of the letter had said, "[t]his communication from a debt collector is an attempt to collect a debt[.]" Id. at 723. Notwithstanding the statement, the court found the notice did not violate the discharge injunction. Id. This is not to say that a mortgage servicer may never be found to have violated the discharge injunction. See Golden, 568 B.R. at 842 (citing cases). But the plaintiff must show something in addition to routine mortgage servicing or foreclosure processing. Id.

### i. PTI

Plaintiff alleges PTI violated the discharge injunction by sending him a borrower welcome letter on June 22, 2017; by sending him monthly loan statements; and by requesting Plaintiff's

credit reports from MicroBilt.

1. June 22, 2017 Letter

On June 22, 2017, PTI sent Plaintiff a "Borrower Welcome Letter" stating "Park Tree Investments, LLC is your Servicing Agent and is servicing your Promissory Note on behalf of your Lender/Creditor, Park Tree Investments 20, LLC." The second paragraph of the letter was labeled "**IMPORTANT BANKRUPTCY INFORMATION**" and stated in bold, capital letters, "**IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT**." The letter went on to state the unpaid principal balance on the note was $40,395. The second to last paragraph of the letter stated, "**IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT Park Tree Investments LLC as Servicing Agent for your Creditor IS ATTEMPTING TO COLLECT A DEBT and ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**."

The objective effect of the June 22 welcome letter was not to pressure Plaintiff to repay a discharged debt. Plaintiff continued to live in the Tradd Property and the letter was sent to Plaintiff from PTI, a mortgage servicer, in the regular course of business to provide information. The letter also included clear and prominent disclaimers informing discharged debtors that the letter was for informational purposes only. The allegations do not plausibly state a claim that PTI violated the discharge injunction by communicating with him through the June 22 letter.

2. Monthly Loan Statements

Starting in July 2017, PTI sent Plaintiff monthly loan statements, which are described

above. Mortgage loan servicing is generally permitted post-discharge, and a creditor may send potentially helpful informational statements to a discharged debtor. For example, in Roth, the creditor sent monthly mortgage statements that included a bold bankruptcy disclaimer on the first page of the statement indicating they were not intended to collect a debt, and the payment coupon was marked as "voluntary." 935 F.3d at 1273, 1276; see also McConnie Navarro, 563 B.R. at 145 (monthly statements did not violate discharge injunction when they included prominent language that they were for informational purposes only and not an attempt to collect a debt and the payment coupon stated it was not an attempt to collect a debt). Conversely, courts have held post-discharge mortgage statements devoid of prominent bankruptcy disclaimer language violate the discharge injunction. Lett, 635 B.R. at 722; see also Todt v. Ocwen Loan Serv., LLC (In re Todt), 567 B.R. 667, 678-79 (Bankr. D.N.H. 2017) (the discharge injunction was violated when the only recognition of bankruptcy was a disclaimer on the back of the monthly statement); In re Cantrell, 605 B.R. 841, 856-57 (Bankr. W.D. Mich. 2019) (first post-discharge mortgage statement sent by servicer violated discharge injunction because it was indistinguishable from prepetition mortgage statements and did not acknowledge the debtor's bankruptcy).

The alleged facts, taken as true, provide sufficient content to reasonably infer PTI's post-discharge mortgage statements violated the discharge injunction. The PTI monthly statements dated August 31, 2017; September 30, 2017; and October 31, 2017 all included a payment amount and a payment coupon. The statements directed Plaintiff to make a payment on the amount due. The statements all threatened action against Plaintiff by stating "[f]ailure to bring your loan current may result in fees and legal action." Moreover, the statements did not include a clear or prominent disclaimer or any acknowledgment of Plaintiff's discharge—they included no reference to bankruptcy or discharge at all. Based on the foregoing, the complaint states a plausible claim that

24

the mortgage statements PTI sent to Plaintiff had the type of coercive effect that violates the discharge injunction.

### 3. Credit Requests

In 2019 and again in 2020, PTI requested MicroBilt, a consumer reporting agency, pull Plaintiff's credit report. On January 28, 2019 and February 3, 2020, MicroBilt obtained Plaintiff's consumer reports from Experian and/or Equifax (Doc. No. 1, Ex Y). Plaintiff disputed the inquiries. MicroBilt sent PTI a request for verification of authority. PTI did not respond to MicroBilt's request to verify PTI's authority to request a credit pull. (Doc. No. 1, Ex. Y).

"[C]redit reporting is an unusually agnostic function. Its primary purpose is to share information relevant to making credit decisions, not modify the behavior of a debtor. In fact, credit reports are not even communicated to their subjects directly." Minech, 632 B.R. at 282. When a creditor requests a credit report, the inquiry may be considered either "soft" or "hard." An inquiry is "soft" when it is made as part of an ongoing relationship between the inquirer and the consumer, relates to employment screening, or will otherwise leave the consumer's credit score unaffected. Hines v. Equifax Info. Servs., LLC, 2022 WL 2841909, at *2 (E.D.N.Y. July 16, 2022). Conversely, an inquiry is "hard" when it is associated with a consumer-initiated application for credit and may therefore impact the consumer's credit score. Id.

Credit reporting is *generally* permitted notwithstanding a bankruptcy filing. Id.; Mortimer v. JP Morgan Chase Bank, Nat. Ass'n, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) ("While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the [FCRA] does so."). As explained above, a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. "Because the debt exists, its

25

reporting alone is not a violation of the discharge injunction absent showing that the purpose or effect of the reporting was to collect the discharged debt as a personal liability of the debtor." In re Giles, 502 B.R. 892, 904 (Bankr. N.D. Ga. 2013); In re Mahoney, 368 B.R. 579, 584 (Bankr.W.D.Tex.2007) ("mere reporting of credit information about a debtor vel non is not an 'act' to collect a discharged debt"); Montano v. First Light Fed. Credit Union (In re Montano), 488 B.R. 695, 710 (Bankr. D.N.M. 2013) (reporting discharged debt as "past due" is facially permissible and does not constitute a per se violation of the discharge injunction). For example, reporting a delinquent debt may be done to share information relevant to credit granting decisions. In re Keller, 568 B.R. 118, 127 (B.A.P. 9th Cir. 2017).

None of this is to say that credit reporting or requesting a debtor's credit report cannot violate the discharge injunction. In certain circumstances, such activity *can* constitute an act to collect a debt. Minech, 632 B.R. at 282. Reporting false or outdated information to a credit agency in an attempt to coerce payment on a discharged debt can violate the discharge injunction, particularly where the creditor knowingly refuses to correct the report to reflect the debtor's discharge. See Todt, 567 B.R. at 680; Minech, 632 B.R. at 286; see also In re Anderson, 641 B.R. 1, 14 (Bankr. S.D.N.Y. 2022) (repeated, unexcused refusal to correct a credit report to reflect a bankruptcy discharge subjects the violator to contempt sanctions). Credit reporting may also violate the discharge injunction where there is evidence of additional collection activity. In re Trinidad, 2022 WL 3363888, at *11 (Bankr. D.P.R. Aug. 12, 2022) (Bankr. D.P.R. Aug. 12, 2022); see e.g., In re Goodfellow, 298 B.R. 358, 362 (Bankr. N.D. Iowa 2003) (finding a violation of the automatic stay and discharge injunction based on reporting of the debtor's debt as "past due" in addition to its collection letters and threatening phone calls to debtor attempting to collect the debt); In re DiBattista, 615 B.R. 31, 43 (S.D.N.Y. 2020) (misleading credit reporting coupled with

other communications suggested creditor was in fact trying to collect a debt). In sum, while credit reporting is generally permissible, it may violate the discharge injunction if its objective effect is to pressure the debtor to pay a discharged debt. <u>Montano,</u> 488 B.R. at 710.

Here, Plaintiff alleges PTI requested his credit report from MicroBilt on two occasions so that it could pursue collection of a discharged debt. It is notable that Plaintiff received a letter in 2018 stating PTI was no longer the servicer. So PTI's authority to request such credit reports is in dispute. Moreover, Plaintiff alleges PTI provided false or outdated information to MicroBilt while inquiring about Plaintiff's credit. Specifically, Plaintiff alleges the inquiry was ordered by PTI representing Plaintiff had applied for a mortgage but he never applied for a mortgage loan with PTI. Further, Plaintiff alleges PTI knowingly refused to respond to MicroBilt's request for verification. Accepting as true the facts alleged, the complaint pleads sufficient factual content for the court to draw the reasonable inference that the credit pulls were made for the purpose of collecting a discharged debt. Accordingly, Plaintiff's claim that PTI violated the discharge injunction by requesting access to Plaintiff's credit report from MicroBilt withstands dismissal.

### ii.  <u>FCI</u>

Plaintiff alleges FCI attempted to collect discharged and/or time-barred debts from Plaintiff by sending him correspondence on May 15, 2018, July 11, 2018, and July 16, 2018, and monthly mortgage statements.

### 1.  <u>May 15, 2018 Letter</u>

PTI transferred its servicing rights to FCI. A "Borrower Welcome Letter," dated May 15, 2018, was sent to Plaintiff stating FCI was the new servicing agent for PTI20 authorized to process and collect scheduled payments. The letter included a paragraph in the center stating, in bold, capital letters, "**IMPORTANT BANKRUPTCY INFORMATION: IF YOU OR YOUR**

**ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT."**

The objective effect of the May 15 welcome letter was not to pressure Plaintiff to repay a discharged debt. Plaintiff continued to live in the Tradd Property and the letter was sent to Plaintiff in the regular course of business to provide information. The letter also included clear and prominent disclaimers informing discharged debtors that the letter was for informational purposes only. The allegations do not plausibly state a claim that FCI violated the discharge injunction by communicating with Plaintiff through the May 15 letter.

### 2.   July 11, 2018 Letter

Plaintiff sent FCI a letter requesting validation and verification of the debt. On July 11, 2018, Singer, on behalf of FCI, sent Plaintiff a responsive letter. As explained above and in the Order on Singer's Motion to Dismiss, the objective effect of the July 11 communication was not to pressure Plaintiff to repay a discharged debt. The allegations do not plausibly state a claim that FCI violated the discharge injunction by communicating with him through the July 11 letter.

### 3.   July 16, 2018 Letter

On July 16, 2018, Singer sent Plaintiff a second letter on behalf of FCI. As explained above and in the Order on Singer's Motion to Dismiss, the July 16 letter was properly sent in preparing for foreclosure proceedings and was not an attempt to collect a debt. The allegations do not plausibly state a claim that FCI violated the discharge injunction by communicating with him through the July 16 letter.

4.   Monthly Statements

Plaintiff alleges FCI sent statements to him from March 14, 2019 through March 14, 2021, each showing an amount due and due date and including a return mail envelope. Each of the statements were labeled as a **"Delinquency Notice."** Every statement from FCI had a detachable payment portion stating, **"PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND  RETAIN THE TOP PORTION FOR YOUR RECORDS."**

Unlike the statements from PTI, the monthly mortgage statements from FCI are not attached to the complaint. But, accepting as true the facts alleged that FCI sent Plaintiff monthly statements seeking payment of a discharged debt, the complaint pleads sufficient factual content for the court to draw the reasonable inference that the statements were sent for the purpose of collecting a discharged debt. The statements allegedly included a due date, amount due, and amount of late fee charged for a late payment, plus a payment coupon. Plaintiff alleges the statements did not include an express acknowledgment of his bankruptcy, any bankruptcy disclaimers, or any indication that payment was voluntary. Based on the foregoing, the complaint states a plausible claim that the mortgage statements FCI sent to Plaintiff had the type of coercive effect that violates the discharge injunction. Accordingly, Plaintiff's claim that FCI violated the discharge injunction by sending monthly mortgage statements withstands dismissal.

### iii.  **PTI20**

Plaintiff alleges PTI20 attempted to collect discharged and/or time-barred debts from Plaintiff by sending him correspondence dated May 23, 2017; May 27, 2017; June 22, 2017; July 12, 2017; and July 16, 2018, sending monthly mortgage statements, and requesting Plaintiff's credit reports from MicroBilt. Plaintiff effectively claims PTI20 is liable for the acts of others who

sent letters, monthly statements, and more on behalf of PTI20.

A plaintiff may meet the pleading requirements by alleging that a creditor is liable because its agent violated the discharge injunction while acting on behalf of the creditor. In re Lett, 2021 WL 5702707, at *15 (Bankr. N.D. Ga. Nov. 29, 2021). "A creditor and its attorney are jointly and severally liable for their violations of the discharge injunction because under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts." In re Schwartz, 2020 WL 3170591, at *6 (Bankr. S.D. Fla. June 12, 2020) (citing Vazquez v. Sears, Roebuck & Co. (In re Vazquez), 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998)); see e.g. In re Plummer, 513 B.R. 135 (Bankr. M.D. Fla. 2014) (holding creditor and his attorney jointly and severally liable for violating discharge injunction by pursuing mortgage foreclosure action). Similarly, a mortgage creditor and its loan servicer are jointly and severally liable for a discharge-injunction violation. In re Lewis, 570 B.R. 195 (Bankr. E.D.N.C. 2017). As explained in Lewis, "a note holder and servicer should be held to the same standard and level of accountability to follow orders of the court and to respect the principles behind the Bankruptcy Code." Id. at 202. Thus, a creditor whose claim is secured by the debtor's principal residence is liable along with its loan servicer for sending statements in an attempt to collect from debtors. Id.; see also Todt, 567 B.R. at 683–84 (creditor bank and servicer held jointly and severally liable based on servicer's violations of the discharge injunction).

### 1.  May 23, 2017 Letter

On May 23, 2017, a letter titled "Notice of Assignment, Sale or Transfer of Servicing Rights" was sent from Sussex Insurance Company to Plaintiff and his now ex-wife stating,

> The servicing of your mortgage loan is being transferred, effective June 7, 2017. This means that after this date, a new Servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

Sussex Insurance Company (f/k/a Companion Property & Casualty Insurance Company) is now collecting your payments. Sussex Insurance Company (f/k/a Companion Property & Casualty Insurance Company) will stop accepting payments received from you on June 7, 2017. Park Tree Investments 20, LLC will collect your payments going forward. Your new Servicer will start accepting payments received from you on June 7, 2017.

Send all payments due on or after June 7, 2017 to Park Tree Investment 20, LLC.[3]

Plaintiff's discharge did not affect the Tradd HELOC—it survived the bankruptcy case. A creditor who holds a claim secured by the debtor's principal residence may continue to communicate with a discharged debtor, as long as the creditor's acts are in the ordinary course of business and limited to seeking payments in lieu of in rem relief (i.e. foreclosure). The May 23 letter is the type of letter a secured creditor would send to a debtor regarding servicing of the underlying loan. The portion of the May 23 letter attached to the complaint does not refer to either bankruptcy or discharge. But the objective effect of the May 23 letter is not to pressure Plaintiff to repay a discharged debt. Rather, the tone of the communication is informational. Moreover, the letter was sent by Sussex Insurance Company on its own and not on behalf of PTI20. Finally, the fact PTI20 bought the loan is not a discharge violation. In re McKay, 613 B.R. 648, 649 (Bankr. E.D. Mich. 2020) (mere sale to a third party of a discharged debt cannot be deemed a violation of the discharge injunction); Finnie v. First Union Nat'l Bank, 275 B.R. 743, 745-46 (E.D. Va. 2002) ("While a creditor is prohibited from utilizing a collection agency to recover a discharged debt on its behalf, there is no prohibition on the creditor *selling* the discharged debt, presumably at a greatly discounted rate, to a third party."). The allegations do not plausibly state a claim that PTI20 violated the discharge injunction by purchasing the loan or by Sussex communicating with Plaintiff in the May 23 letter.

---

[3] The exhibit to the complaint only includes the first page of the letter.

## 2.  May 27, 2017 Letter

On May 27, 2017 PTI20 sent Plaintiff a letter entitled "New Investor—Truth in Lending Act Disclosure." The letter notified Plaintiff that PTI20 was the new owner of his mortgage loan. A second page showed the current servicer (Sussex Insurance Company) would be changed to a new servicer, PTI20.

As explained above, the Tradd HELOC survived Plaintiff's bankruptcy case and discharge. The May 27, 2017 letter was sent to Plaintiff in the regular course of business to provide information about the owner of the Tradd HELOC. It did not mention a loan amount, payment amount, or otherwise direct Plaintiff to make any payments. The May 27 letter did not state anything about attempting to collect the debt from Plaintiff personally. The entire tenor of the May 27 letter was to provide Plaintiff with information about the underlying loan that survived bankruptcy. The May 27 letter was not coercive and cannot fairly be read as threatening to proceed against Plaintiff personally. Rather, it was sent for informational purposes. The allegations do not plausibly state a claim that PTI20 violated the discharge injunction by communicating with Plaintiff through the May 27 letter.

## 3.  June 22, 2017 Letter

On June 22, 2017, PTI sent Plaintiff a "Borrower Welcome Letter." As discussed above, the objective effect of the June 22 welcome letter was not to pressure Plaintiff to repay a discharged debt. Plaintiff continued to live in the Tradd Property and the letter was sent to Plaintiff in the regular course of business to provide information. The letter also included clear and prominent disclaimers informing discharged debtors that the letter was for informational purposes only. As stated above, the allegations do not plausibly state a claim that PTI violated the discharge injunction by communicating with Plaintiff through the June 22 letter; the claim fails against PTI20

for the same reason.

### 4.  July 12, 2017 Letter

On July 12, 2017, PTI20 sent Plaintiff a letter regarding his "Cease and Desist Request" stating, "Park Tree Investments 20, LLC is in receipt of your Cease and Desist request. Your file has been noted and you will not receive collection communications." A paragraph at the bottom of the letter stated,

> Please be advised that Park Tree investments is a debt collector, and information you provide to us may be used for that purpose. However, if you have filed for bankruptcy, we will abide by any applicable automatic stay, modification or discharge. Further, if you filed Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt any act to collect, recover or offset the discharged debt es (sic) your personal liability.

The objective effect of the July 12 communication was not to pressure Plaintiff to repay a discharged debt. The letter was sent to Plaintiff in response to a letter he sent and contact he initiated. The July 12 letter was clearly identified as a response to his "Cease and Desist Request," not a demand letter. The letter also included a bankruptcy disclaimer. The allegations do not plausibly state a claim that PTI20 violated the discharge injunction by communicating with him through the July 12 letter.

### 5.  July 11, 2018 Letter

On July 11, 2018, Singer sent Plaintiff a letter on behalf of PTI. As explained in the Court's Order on Singer's Motion to Dismiss (Doc. No. 35), the July 11 letter was sent in response to Plaintiff's correspondence dated June 8, 2018, and included a bankruptcy notice. The objective effect of the July 11 communication was not to pressure Plaintiff to repay a discharged debt. The letter was sent to Plaintiff in response to an inquiry he made and contact he initiated. The July 11 letter was clearly identified as a "Response to Consumer Correspondence," not a demand letter. It

33

provided information regarding the loan and listed the current payoff amount, as requested by Plaintiff. The letter also included a bankruptcy disclaimer. The allegations do not plausibly state a claim that PTI20 violated the discharge injunction by directing Singer to send the July 11 responsive letter.

### 6. July 16, 2018 Letter

Plaintiff alleges Singer sent him a second letter on behalf of PTI20 on July 16, 2018 that violated the discharge injunction. The July 16, 2018 letter stated, "You are receiving this notice because your second mortgage is in default, and your property is in jeopardy of being referred to foreclosure." The letter identified Park Tree Investments 20, LLC as the noteholder. The letter provided Plaintiff an itemized account summary as of August 17, 2018, stating the amount needed to reinstate or bring the account current was $36,740.07. The letter explained, "[i]f the default is not cured on or before August 17, 2018 the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure will be initiated at that time. The failure to cure the default may result in the foreclosure and sale of your property."

As explained in the Court's Order on Singer's Motion to Dismiss (Doc. No. 35), a formal notice of default may make sense in "the context of preventing foreclosure," particularly where the lender is required by state law to send a pre-foreclosure notice. See In re Gill, 529 B.R. 31, 40–41 (Bankr. W.D.N.Y. 2015); Mele, 486 B.R. at 558 (acknowledging that "in order to pursue in rem rights, rights that are expressly preserved and recognized in § 524, [the creditor] is required to provide certain notices and information to [the debtor]"); In re Ho, 624 B.R. 748, 752–53 (Bankr. E.D.N.Y. 2021) (state-mandated pre-foreclosure notices were for informational purposes and did not violate the discharge injunction). Moreover, even if a letter constitutes an act to collect

a debt, it may be permitted by section 524(j), under which a mortgagee with a lien on a debtor's principal residence is permitted to send statements to a debtor in the ordinary course of business, instead of seeking in rem relief, permitting the debtor to pay the secured debt and keep the property. Best, 540 B.R. at 11; Gill, 529 B.R. at 38; see also In re Manning, 505 B.R. 383, 387 (Bankr. D. N.H. 2014) (lender's requests that debtor become current to avoid in rem relief fell within the safe harbor of section 524(j)).

The July 16 letter notified Plaintiff that the Tradd HELOC was in default, and the Tradd Property was in jeopardy of being referred to foreclosure. The face of the letter did not include a prominent disclaimer or any language about bankruptcy or discharge, but a disclaimer is not determinative. The account summary and statement "[i]f the default is not cured . . . the mortgage payments will be accelerated in full" was made in the context of preventing foreclosure. The letter did not state anything about attempting to collect the debt from Plaintiff personally. The entire tenor of the July 16 letter was to provide Plaintiff with information about avoiding foreclosure. The July 16 letter was not coercive and cannot fairly be read as threatening to proceed against Plaintiff personally. Rather, it was sent for informational purposes in the event Plaintiff wanted to cure the default in order to prevent foreclosure. Pre-foreclosure notice was also required under Georgia law. See O.C.G.A. § 44-14-162.2. Moreover, a request for Plaintiff to become current to avoid in rem relief falls within the safe harbor of section 524(j) where, as here, the letter was sent on behalf of PTI20, which retained a security interest in Plaintiff's principal residence. The claim that PTI20 violated the discharge injunction by directing Singer to send the July 16 letter fails.

7. <u>Monthly Statements</u>

PTI and FCI, as servicer for PTI20's loan, sent Plaintiff monthly statements starting around July 2017. These statements are detailed above. As explained above in relation to PTI and FCI,

the alleged facts accepted as true provide sufficient content to reasonably infer PTI's and FCI's post-discharge mortgage statements violated the discharge injunction. Based on the foregoing, the complaint states a plausible claim that PTI20 violated the discharge injunction when PTI and FCI sent mortgage statements on PTI20's behalf.

### 8.  Credit Requests

As discussed above, PTI, servicing the loan on behalf of PTI20, requested MicroBilt pull Plaintiff's credit report in 2019 and again in 2020. As explained above, credit reporting is generally permitted notwithstanding a bankruptcy filing, but requesting a debtor's credit report can constitute an act to collect a debt. Plaintiff alleges PTI requested his credit report so that it could pursue collection of a discharged debt, provided false or outdated information, and knowingly refused to respond to MicroBilt's request for verification, all of which support the reasonable inference the credit pulls were made for the purpose of collecting a discharged debt. Accordingly, Plaintiff's claim that PTI20 violated the discharge injunction when its loan servicer PTI requested access to Plaintiff's credit report withstands dismissal.

### iv.  **Engle**

Plaintiff alleges all the allegations as to PTI also apply to Engle individually. Generally, a corporate officer's acts on the corporation's behalf are deemed to be acts of the corporation. Accordingly, the corporate shield may protect an officer from personal liability for actions taken on behalf of the corporation. In re Anderson, 2017 WL 1066563, at *2 (Bankr. S.D. Tex. Mar. 17, 2017). Nevertheless, a corporate officer may be personally liable for corporate conduct when the corporate officer *personally* engages in wrongful conduct, even conduct that is within the scope of his employment. Id.; In re Hamby, 646 B.R. 865, 877 (Bankr. N.D. Ga. 2022) (explaining under Georgia law, an agent of a corporation or limited liability company is still subject to personal

liability for his or her personal conduct). An officer of a corporation may be responsible for the commission of a tort by the corporation if the officer directs the act to be done, participates in it, or personally takes part in the commission of the tort. Id. (citing Cushing v. Cohen, 323 Ga. App. 497 (2013); Dave Lucas Co. v. Lewis, 293 Ga. App. 288 (2008); BTL Com Ltd. v. Vachon, 278 Ga. App. 256 (2006) (collecting cases)). The same is true of a member of a Georgia limited liability company. Id. (citing Milk v. Total Pay and HR Solutions, Inc., 280 Ga. App. 449 (2006)). Thus, a corporate form cannot shield an individual, be it officer, member, or employee, from liability for violation of the discharge injunction if the individual personally directed, authorized, or participated in conduct that violates the discharge injunction. See In re Smith, 2012 WL 566246, at *9 (Bankr. W.D. Tex. Feb. 21, 2012).

Plaintiff alleges Engle violated the discharge injunction but, with the exception below, he does not allege Engle personally directed, authorized, or participated in any other conduct that violated the discharge injunction. Plaintiff alleges Engle directed PTI20 to send him a letter on May 23, 2018. But, as discussed above, the allegations do not plausibly support a claim that the May 23 letter constituted an impermissible act to collect discharged debt. Factual allegations against an individual must do more than simply create a "suspicion of a legally cognizable right of action." Twombly, 550 U.S. at 555. To survive a motion to dismiss, the complaint must include specific allegations the individual defendant personally engaged in wrongful acts. See Smith, 2012 WL 566246, at *9 (dismissing complaint under Rule 12(b)(6) against individual defendants where none of the allegations suggested the individual defendants personally engaged in wrongful conduct). Because the complaint does not include specific allegations Engle personally engaged in wrongful acts, it fails to state a plausible claim Engle violated the discharge injunction and dismissal pursuant to Rule 12(b)(6) is appropriate.

### v. **Jauregui and Lindsey and J&L**

Plaintiff does not allege Jauregui and Lindsey or J&L violated the discharge injunction. Plaintiff alleges the "other defendants violated the discharge injunction in various ways as well," but Plaintiff does not specify what Jauregui and Lindsey or J&L, individually or corporately, did or how they violated the discharge injunction. The complaint does not contain sufficient factual matter to state a claim Jauregui and Lindsey or J&L violated the discharge injunction. Accordingly, dismissal for failure to state a claim as to Jauregui and Lindsey and J&L is appropriate.

## IV.    ABSTENTION

The Engle Defendants ask the Court to abstain from considering Plaintiff's claims. Under 28 U.S.C. § 1334(c)(1), the Court has discretion to abstain from hearing a case "in the interest of justice, or in the interest of comity with State courts or respect for state law." Id.  Courts may exercise their authority to abstain *sua sponte*. Carver v. Carver, 954 F.2d 1573, 1579 (11th Cir. 1992). Courts employ a multifactor test to determine whether abstention is appropriate.  Courts consider the following nonexclusive factors:

(1) the effect, or lack thereof, on the efficient administration of the bankruptcy estate if the discretionary abstention is exercised;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of the applicable law;
(4) the presence of related proceedings commenced in state court or other non-bankruptcy court;
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and
(12) the presence in the proceeding of non-debtor parties.

38

Ret. Sys. of Alabama v. J.P. Morgan Chase & Co., 285 B.R. 519, 530–31 (M.D. Ala. 2002).

These factors weigh against abstention here. This proceeding presents a question regarding the discharge injunction. A debtor's claim to enforce the discharge injunction is a core proceeding "arising under" the Bankruptcy Code. In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009). As other courts have observed, "there [are] few matters as 'core' to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code." In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (citation omitted). Plaintiff's claims against the Engle Defendants in this adversary proceeding implicate rights that exist solely because Plaintiff filed bankruptcy and obtained a discharge in bankruptcy. It is axiomatic that this Court has subject matter jurisdiction to consider such core matters. See Golden, 630 B.R. at 920. Moreover, as the District Court recognized, the bankruptcy court is the appropriate court to determine these issues. See also Pereira v. First N. Am. Nat. Bank, 223 B.R. 28, 31 (N.D. Ga. 1998) (bankruptcy court that issued the discharge injunction is proper forum for dispute regarding violations of discharge injunction). Finally, this case does not impose a significant burden on the Court's docket and, if anything, this case can be managed more efficiently in this Court than elsewhere. For all these reasons, the Court declines to exercise its discretion to abstain from hearing this adversary proceeding.

## V.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** to the extent the Engle Defendants request abstention.

IT IS FURTHER ORDERED that the Motion is **GRANTED IN PART** and **DENIED IN PART** as to PTI. The Motion is **GRANTED** as to the claim that PTI violated the discharge injunction by sending Plaintiff correspondence dated June 22, 2017, and such claim is **DISMISSED**. The Motion is **DENIED** as to dismissal for lack of subject matter jurisdiction for insufficient service of process as to PTI. The Motion is **DENIED** as to the claim PTI violated the discharge injunction by sending Plaintiff monthly mortgage statements and by requesting Plaintiff's credit report; the claim stands.

IT IS FURTHER ORDERED that the Motion is **GRANTED IN PART** and **DENIED IN PART** as to FCI. The Motion is **GRANTED** as to the claim that FCI violated the discharge injunction by sending Plaintiff correspondence dated May 15, 2018; July 11, 2018; and July 16, 2018; such claim is **DISMISSED**. The Motion is **DENIED** as to dismissal for lack of subject matter jurisdiction for insufficient service of process as to FCI. The Motion is **DENIED** as to the claim that FCI violated the discharge injunction by sending Plaintiff monthly mortgage statements; such claim stands.

IT IS FURTHER ORDERED that the Motion is **GRANTED IN PART** and **DENIED IN PART** as to PTI20. The Motion is **GRANTED** as to the claim that PTI violated the discharge injunction by sending Plaintiff correspondence dated May 23, 2017; May 27, 2017; June 22, 2017; July 11, 2017; July 12, 2017; and July 16, 2018; such claim is **DISMISSED**. The Motion is **DENIED** as to the claim PTI20 violated the discharge injunction by PTI and FCI sending monthly mortgage statements and by PTI requesting Plaintiff's credit report; such claim stands. The Motion is **DENIED** as to dismissal for lack of subject matter jurisdiction for insufficient service of process as to PTI20. **IT IS FURTHER ORDERED** that Plaintiff is directed to obtain an alias summons within 10 days of the date hereof and serve PTI20 via its registered agent at The Corporation

40

Company, 251 Little Falls Drive, Wilmington, DE 19808. Plaintiff must serve the summons and complaint within 7 days of issuance of the summons pursuant to Bankruptcy Rule 7004(e), and the Court extends the time to complete service under Federal Rule of Civil Procedure 4(m) to 30 days from the date hereof.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** as to dismissal for lack of subject matter jurisdiction for insufficient service of process as to Engle, Jauregui, and Lindsey.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** as to dismissal for failure to state a claim for relief under Rule 12(b)(6) as to Engle and J&L, Jauregui, and Lindsey. The complaint is therefore **DISMISSED** in its entirety as to Engle, J&L, Jauregui, and Lindsey.

**END OF DOCUMENT**

<u>**Distribution List**</u>

Emmanuel O. Ohai
863 Flat Shoals Rd. SE
C #155
Conyers, GA 30094

Larry W. Johnson
138 Hammond Drive, Suite B
Atlanta, GA 30328