**IT IS ORDERED as set forth below:**



Date: March 7, 2024

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 12-65475-WLH |
| EMMANUEL OHAI, | CHAPTER 7 |
| Debtor. | |
| EMMANUEL OHAI, | ADVERSARY PROCEEDING NO. 23-5041-WLH |
| Plaintiff, | |
| v. | |
| DELTA COMMUNITY CREDIT UNION, PNC BANK NATIONAL ASSOCIATION, INC., DEAN ENGLE & PARK TREE INVESTMENTS, LLC, PARK TREE INVESTMENTS 20, LLC, FCI LENDER SERVICES, INC., DANIEL I. SINGER & SINGER LAW GROUP, PHILLIP L. JAUREGUI D/B/A JAUREGUI & LINDSAY LLC, MICHAEL W. LINDSEY D/B/A, JAUREGUI & LINDSEY, LLC, MICROBILT CORPORATION, | |
| Defendants. | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AS TO DELTA COMMUNITY CREDIT UNION AND
SETTING DEADLINE FOR PRE-TRIAL ORDER**

1

This matter is before the Court on Plaintiff's Motion for Summary Judgment against Delta Community Credit Union ("Delta") (Doc. No. 126). The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the claim of violating the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), & (O). See In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (it is axiomatic that this Court has subject matter jurisdiction to consider such core matters); In re Johnson, 575 F.3d 1079, 1083 (10th Cir. 2009); In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009).

I.     **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable to contested matters by Federal Rules of Bankruptcy Procedure 7056 and 9014. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c) ; Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The party moving for summary judgment has "the initial responsibility of informing the . . . court of [the] basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." U.S. v. Four Parcels of Real Prop.,

2

941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323).

## II.     UNDISPUTED FACTS

Plaintiff and his now ex-wife purchased their primary residence at 2715 Tradd Court, Snellville, Georgia (the "Tradd Property") in April 2006 and executed a note and security deed in favor of Delta (the "Tradd Mortgage Loan"). In March 2008, Plaintiff and his now ex-wife obtained a home equity loan in the amount of $46,000 from Delta, secured by a second security deed (the "Tradd HELOC"). Plaintiff and his now ex-wife defaulted on the Tradd HELOC in 2010.

On June 20, 2012, Plaintiff and his now ex-wife filed a petition under Chapter 7 of the Bankruptcy Code. Plaintiff received a discharge and the bankruptcy case was closed on October 5, 2012 (Bankr. Doc. No. 14). Plaintiff continued to live in the Tradd Property and continued to make payments on the Tradd Mortgage Loan.

On March 29, 2023, Plaintiff filed the complaint against Delta and others. Plaintiff alleged Delta violated the automatic stay by 1) sending him a letter dated September 14, 2012, 2) informing credit reporting agencies Plaintiff owed a delinquent debt and making derogatory reports to the agencies, and 3) communicating directly with Plaintiff. Plaintiff also alleged Delta violated the discharge injunction by 1) selling either or both of its loans, 2) its employee asking him to make a payment on the discharged debt, and 3) continuing to try to collect discharged debt. Plaintiff claims that, at some point in 2019, Delta's Loss Mitigation Coordinator Cindy Morrow talked with Plaintiff on the telephone and asked, "Mr. Ohai, why don't you want to make your 2nd mortgage payments?", and tried to talk him into making a debit card payment on the debt.

Delta filed a Motion to Dismiss (Doc. No. 11) stating the complaint failed to state a plausible claim for relief. The Court entered an order (Doc. No. 33) granting in part and denying in part the Motion to Dismiss. The Court dismissed Plaintiff's claims that Delta violated the

automatic stay and that Delta violated the discharge injunction by selling the underlying loans and generally trying to collect discharged debt. Plaintiff's claim Delta violated the discharge injunction by asking him to make a payment on the debt based on the 2019 call with Ms. Morrow withstood dismissal.

Plaintiff filed the Motion on January 31, 2024. Plaintiff states no genuine issues of material fact exist that Delta violated the discharge injunction by continuing to attempt to collect discharged debt. His claim relies on the alleged call with Delta's Loss Mitigation Coordinator Cindy Morrow in March 2019.

Delta filed a Response (Doc. No. 156) in opposition to the Motion. Delta contends material facts are disputed, in particular, the timing and content of the March 2019 telephone calls, such that summary judgment is precluded. According to Delta and the affidavits it submitted, Plaintiff called Delta several times in March 2019 (on March 1, March 5, and March 7) to check the status of his mortgage payment (not the HELOC payment), and that Ms. Morrow assisted Plaintiff by informing him that he could pay in person, by mail, or via telephone. Delta states that Plaintiff decided to pay over the phone and gave Ms. Morrow his debit card information, at which point Ms. Morrow asked if it was okay to charge the debit card for $426.96. Delta asserts no conversation occurred on the date Plaintiff asserts and that at no time did Ms. Morrow demand payment from Plaintiff.

Plaintiff filed a Reply in support of the Motion (Doc. No. 170), in which he contends Ms. Morrow spoke to him about paying the Tradd HELOC, not the Tradd Mortgage.

### III.  ANALYSIS

Section 524 governs a debtor's discharge in bankruptcy. It provides that a bankruptcy discharge, among other things:

4

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). "The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as: letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment." In re McConnie Navarro, 563 B.R. 127, 141 (Bankr. D.P.R. 2017) (citation omitted).

Pursuant to section 105, a bankruptcy court may enforce the discharge injunction and "order damages if the circumstances so require." Id. Sanctions for violations of the discharge injunction are in the nature of civil contempt. Id. Imposing sanctions for a discharge violation requires two separate inquiries: first, whether the discharge order was violated, and then, second, whether the party had "knowledge" of the discharge order and whether there was no fair ground of doubt that the actions taken would violate it. Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019). Simply being aware of the discharge order, however, and intending the actions that violated the order are not sufficient to constitute knowledge. Id. But the Court need not reach the question of "knowledge" if the acts of which Plaintiff complains do not violate the discharge injunction by objectively pressuring Plaintiff to pay a discharged debt. See In re Minech, 632 B.R. 274, 282 (Bankr. W.D. Pa. 2021); In re Roth, 935 F.3d 1270, 1278–79 (11th Cir. 2019) (emphasis in original) (the court must determine "whether the *objective* effect of [the act] . . . is to pressure a debtor to repay a discharged debt"). "In this regard, a subjective good faith belief that the action taken does not violate the discharge injunction is not sufficient to avoid sanctions if such a belief is not objectively reasonable." Milani, 2020 WL 5551990, at *5.

5

The discharge injunction, however, has limits. A Chapter 7 discharge releases the debtor from all debts that arose before the petition date, but it only extinguishes "personal liability of the debtor." 11 U.S.C. §§ 727(b), 524(a)(2). The discharge does not affect a secured creditor's interest in real property, and a creditor's right to foreclose on a mortgage survives the bankruptcy. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); see also Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy"); Bentley v. OneMain Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) ("The concept that a lien 'rides through' bankruptcy is axiomatic."). "[A]fter the automatic stay terminates as to the property, a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." In re Best, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (citation omitted).

Section 524 does not bar all contact with a discharged debtor. Indeed, section 524(j) provides an exception to the discharge injunction for creditors who hold claims secured by the debtor's principal residence as long as the creditor's acts are in the ordinary course of business between the debtor and the creditor and limited to seeking payments in lieu of in rem relief (i.e. foreclosure). This section provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). All three requirements must be met for the exception to apply. In re Lemieux, 520 B.R. 361, 368 (Bankr. D. Mass. 2014). "The law thus attempts to create a safe harbor for a

6

mortgage servicer to continue to send advices of and payment books to the debtor even if the personal debt has been discharged." McConnie Navarro, 563 B.R. at 142 (citation omitted). The purpose of section 524(j) is to permit certain post-discharge actions of a secured creditor when the debtor remains in his or her home. See In re Whitaker, 2013 WL 2467932, at *8-9 (Bankr. E.D. Tenn. June 7, 2013); In re Steinberg, 447 B.R. 355, 359 (Bankr. S.D. Fla. 2011). As one court explained, the exception in section 524(j) "makes sense" because it "would allow a secured creditor to remain in contact with a debtor who was living in the real property as his principal residence, send communications in the regular course of business, and explore the possibility of the debtor retaining his principal residence—i.e., collecting payments in lieu of foreclosure." Bibolotti v. American Home Mortgage Servicing, Inc., 2013 WL 2147949, *9 (E.D. Tex. May 15, 2013).

Not all communications with a debtor post-discharge are prohibited, and section 524(j) expressly contemplates some communication between a creditor and the debtor after the entry of the discharge order. The distinction between communications that improperly seek to impose personal liability on a debtor and those that merely seek periodic payments in lieu of foreclosure is dependent, to a great extent, on the content of the communication. In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019). The court must determine "whether the *objective* effect of [a communication] is to pressure a debtor to repay a discharged debt". Roth, 935 F.3d at 1278–79 (emphasis in original). "[T]he line between forceful negotiation and improper coercion is not always clear." McConnie Navarro, 563 B.R. at 143 (citation omitted). "An action is considered coercive when it is 'tantamount to a threat' . . . or places the debtor 'between a rock and a hard place.'" Id. "[C]ourts consider the 'immediateness' of the threatened action and the context in which this action took place." Id. For example, in In re Giles, 502 B.R. 892, 903 (Bankr. N.D. Ga.

7

2013), the creditor called the debtor regarding late payments on a note secured by the debtor's principal residence. The court considered the timing and the purpose of the contacts and found the creditor's calls were limited to seeking the late payments on the note so that it would not be forced to foreclose, which it knew was its only remedy. Id. There was no evidence the communications were for the purpose of coercing the debtor into making a payment she did not want to make and, accordingly, the court found the calls did not violate the discharge injunction. Id.

Here, there are factual disputes as to the timing and substance of the 2019 phone call(s) between Plaintiff and Ms. Morrow. On the one hand, Plaintiff contends that during a telephone call at some point in March 2019, Ms. Morrow tried to persuade him to make a $426.26 payment on the discharged HELOC debt. On the other hand, Delta contends Plaintiff called Delta on March 1, March 5, and March 7, to find out information about voluntarily making a payment on the Tradd Mortgage Loan and that Ms. Morrow was merely confirming that Plaintiff wanted to make the payment with his debit card. Accordingly, there are genuine issues of material fact as to whether Delta violated the discharge injunction by asking Plaintiff to make a payment during the 2019 phone call. Plaintiff acknowledges as much in his brief when he argues a "reasonable trier of fact might conclude" Delta violated the discharge injunction (Doc. No. 128 p. 15). This statement implicitly recognizes such a trier of fact might not come to the conclusion advocated by Plaintiff and, therefore, summary judgment is not warranted.

## IV. CONCLUSION

**IT IS ORDERED** that the Motion is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff and Delta have thirty (30) days from the entry of this order to submit a joint pre-trial order in accordance with Bankruptcy Local Rule 7016-2, which addresses the trial of the issue with Delta only.

**END OF DOCUMENT**

**Distribution List**

Emmanuel O Ohai
863 Flat Shoals Rd. SE
C #155
Conyers, GA 30094

Charles H. Van Horn
Berman Fink Van Horn, P.C.
3475 Piedmont Rd., NE
Suite 1100
Atlanta, GA 30305