**IT IS ORDERED as set forth below:**



Date: April 3, 2024

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-65475-WLH |
| EMMANUEL OHAI, | CHAPTER 7 |
| Debtor. | |
| EMMANUEL OHAI, | ADVERSARY PROCEEDING NO. 23-5041-WLH |
| Plaintiff, | |
| v. | |
| DELTA COMMUNITY CREDIT UNION, PNC BANK NATIONAL ASSOCIATION, INC., DEAN ENGLE & PARK TREE INVESTMENTS, LLC, PARK TREE INVESTMENTS 20, LLC, FCI LENDER SERVICES, INC., DANIEL I. SINGER & SINGER LAW GROUP, PHILLIP L. JAUREGUI D/B/A JAUREGUI & LINDSAY LLC, MICHAEL W. LINDSEY D/B/A, JAUREGUI & LINDSEY, LLC, MICROBILT CORPORATION, | |
| Defendants. | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**
**FILED BY PLAINTIFF AND FCI LENDER SERVICES, INC.**

1

**THIS MATTER** is before the Court on Cross Motions for Summary Judgment filed by FCI Lender Services, Inc. ("FCI") (Doc. No. 81—85) and Plaintiff (Doc. No. 105—108), and the parties' responses thereto (Docs. Nos. 90—92; 146, 148, & 157). The Court held oral argument on the Motions on March 27, 2024. The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the claim of violating the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O). See In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (it is axiomatic that this Court has subject matter jurisdiction to consider such core matters); In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009).

## I.     SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable to contested matters by Federal Rules of Bankruptcy Procedure 7056 and 9014. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The party moving for summary judgment has "the initial responsibility of informing the . . . court of [the] basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes

2

demonstrate the absence of a genuine issue of material fact." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323). What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

When the nonmoving party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material negating the opponent's claim" (cites omitted) in order to discharge this "initial responsibility".

> Instead, the moving party simply may "show - that is, point out to the . . . court - that there is an absence of evidence to support the nonmoving party's case." (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Id. at 1437–38 (citing Celotex, 477 U.S. at 323–31).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

## II. UNDISPUTED FACTS

The facts relating to this adversary proceeding are set out in the Court's Order on the Engle Defendants Motion to Dismiss (Doc. No. 37) and incorporated herein. As more fully explained in that order, Plaintiff and his now ex-wife purchased their primary residence at 2715 Tradd Court, Snellville, Georgia (the "Tradd Property") in April 2006 and executed a note and security deed in favor of Delta Community Credit Union ("Delta") (the "Tradd Mortgage Loan"). In March 2008,

3

Plaintiff and his now ex-wife obtained a home equity loan in the amount of $46,000 from Delta, secured by a second security deed (the "Tradd HELOC"). Plaintiff and his now ex-wife defaulted on the Tradd HELOC in 2010.

On June 20, 2012, Plaintiff and his now ex-wife filed a petition under Chapter 7 of the Bankruptcy Code. Plaintiff and his ex-wife received a discharge on October 5, 2012, and the bankruptcy case was closed (Bankr. Doc. No. 14).

Plaintiff continued to live in the Tradd Property. The Tradd HELOC was sold to Park Tree Investments 20, LLC ("PTI20") by May 23, 2017. Park Tree Investments, LLC ("PTI") was identified as the servicer. PTI transferred servicing of the Tradd HELOC in May 2018 to FCI, which is a loan servicer.

FCI sent Plaintiff monthly mortgage statements from March 14, 2019 through March 30, 2021. Each included a single-sided paper identifying Plaintiff's name and address and a second double-sided sheet of paper. One side was labeled "Payment Statement," and included an amount due, explanation of payment due, and box labeled "Delinquency Notice" that stated: "You are late on your monthly mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of [the date of the statement] you are [number] days delinquent on your mortgage loan. . . . You must pay this amount to keep your loan current." The statements from FCI also had a detachable payment portion stating, **"PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR RECORDS."** The backside of each statement included a disclaimer, in bold, capitalized text, stating:

> **IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT**

**TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Starting with the October 30, 2019 statement, FCI included a third piece of paper with the next eighteen statements labeled "Important Disclosures," with a bankruptcy disclaimer in bold, capitalized text identical to the disclaimer on the back of the Payment Statement.

On March 29, 2023, Plaintiff filed the complaint against FCI, as well as his former mortgage holders, certain debt collectors, and a consumer reporting agency. Plaintiff alleged FCI attempted to collect discharged and/or time-barred debts from Plaintiff by sending him correspondence and monthly mortgage statements. FCI, collectively with Dean Engle, PTI, PTI20, and Phillip L. Jauregui d/b/a Jauregui & Lindsey and Michael W. Lindsey d/b/a Jauregui & Lindsey, LLC, filed a Motion to Dismiss (Doc. No. 6). On August 23, 2023, the Court entered an order granting the motion in part and denying the motion in part (Doc. No. 37). The Court found the allegations did not plausibly state a claim that FCI violated the discharge injunction by communicating with Plaintiff through letters dated May 15, July 11, and July 16. The complaint did, however, state a plausible claim that the mortgage statements FCI sent to Plaintiff had the type of coercive effect that violates the discharge injunction because copies of the statements were not attached to the complaint for the Court to review. Accordingly, Plaintiff's claim that FCI violated the discharge injunction by sending monthly mortgage statements withstood dismissal. The Court ordered FCI to file an answer within 30 days (Doc. No. 38). FCI filed an Answer on August 28, 2023.

FCI filed its Motion for Summary Judgment on December 21, 2023 (Doc. No. 81), and filed the affidavit of TR Hansen, which identified copies of all the statements sent by FCI. FCI contends there is no dispute of material fact that the monthly statements it sent Plaintiff did not

5

violate the discharge injunction. FCI states the statements were informational, all contained bold, conspicuous disclaimers, and fall within the safe harbor provision of section 524(j).

Plaintiff filed his own Motion for Summary Judgment against FCI on January 23, 2024 (Doc. No. 105). Plaintiff does not dispute that FCI sent him monthly statements, but does dispute how the statements are characterized (he contends they were not "complete monthly mortgage statements" as claimed by FCI, but rather payment statements). Plaintiff argues that the disclaimers included in the statements used hypothetical language that did not acknowledge that he had in fact filed bankruptcy and was confusing. He states the statements were internally contradictory because on one side they asserted Plaintiff had to pay a debt while on the back side stating in a disclaimer that he need not pay the debt if it had been discharged. Plaintiff states the cumulative effect of the statements and communications from FCI created the perception that he needed to pay FCI, and points to letters dated May 15, 2018 and April 26, 2018 in support of his argument.

### III.    ANALYSIS

#### a.    **Discharge Injunction**

Section 524 governs a debtor's discharge in bankruptcy. It provides that a bankruptcy discharge, among other things:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). "The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as: letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment." McConnie Navarro v. Banco Pupular De Puerto Rico (In re McConnie Navarro), 563 B.R. 127, 141 (Bankr. D.P.R. 2017) (citation omitted).

Pursuant to section 105, a bankruptcy court may enforce the discharge injunction and "order damages if the circumstances so require." Id. Sanctions for violations of the discharge injunction are in the nature of civil contempt. Id. To determine if sanctions are appropriate, the Court must first "determine whether a communication is a prohibited debt collection under section 524, by looking to 'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.'" In re Roth, 935 F.3d 1270, 1276 (11th Cir. 2019) (citing In re McLean, 794 F.3d 1313, 1322 (11th Cir. 2015). If so, we then evaluate whether that violation of the discharge injunction is sanctionable under section 105, by determining if 'there is *no fair ground of doubt* as to whether the order barred the creditor's conduct.'" Roth, 35 F.3d at 1276 (citing Taggart v. Lorenzen, 139 S. Ct. 1795, 1799 (2019)). If the act is a discharge violation, the Supreme Court has held that a bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." Taggart, 139 S. Ct. at 1801. To meet this standard, the party that violated the discharge injunction must have acted with knowledge of it. In re Cowan, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020); see also In re Milani, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020) ("In this regard, a subjective good faith belief that the action taken does not violate the discharge injunction is not sufficient to avoid sanctions if such a belief is not objectively reasonable.").

The discharge injunction, however, has limits. A Chapter 7 discharge releases the debtor from all debts that arose before the petition date, but it only extinguishes "personal liability of the debtor." 11 U.S.C. §§ 727(b), 524(a)(2). The discharge does not affect a secured creditor's interest in real property, and a creditor's right to foreclose on a mortgage survives the bankruptcy. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); see also Farrey v. Sanderfoot, 500 U.S. 291, 297

7

(1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy"); Bentley v. OneMain Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) ("The concept that a lien 'rides through' bankruptcy is axiomatic."). "[A]fter the automatic stay terminates as to the property, a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." In re Best, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (citation omitted).

Section 524 does not bar all contact with a discharged debtor. Indeed, section 524(j) provides an exception to the discharge injunction for creditors who hold claims secured by the debtor's principal residence as long as the creditor's acts are in the ordinary course of business between the debtor and the creditor and limited to seeking payments in lieu of *in rem* relief (i.e. foreclosure). This section provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). All three requirements must be met for the exception to apply. Lemieux, 520 B.R. at 368. "The law thus attempts to create a safe harbor for a mortgage servicer to continue to send advices of and payment books to the debtor even if the personal debt has been discharged." Navarro, 563 B.R. at 142 (citation omitted).

As section 524(j) makes clear, section 524 does not bar a creditor from contacting a debtor who received a discharge in bankruptcy. "Communication of information regarding a residential mortgage debt is not an 'act to collect' a debt if there is a valid purpose in communicating the

8

information and if the communication itself is informational only[.]" Thomas v. Seterus Inc. (In re Thomas), 554 B.R. 512, 520 (Bankr. M.D. Ala. 2016). "[S]ome post discharge communication is necessary and should be encouraged," especially in a case in which a debtor is intending to keep his home. Mele v. Bank of Am. Home Loans (In re Mele), 486 B.R. 546, 556 (Bankr. N.D. Ga. 2013); see also In re Schatz, 452 B.R. 544, 549-50 (Bankr. M.D. Pa 2011) (explaining that secured creditors should be encouraged to send informational statements to a discharged debtor who intends to keep the secured property).

"[T]he distinction between communications that improperly seek to impose personal liability on a debtor and those that merely seek periodic payments in lieu of foreclosure is dependent, to a great extent, on the content of the correspondence." In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019). The court must determine "whether the *objective* effect of [a communication] is to pressure a debtor to repay a discharged debt". Roth, 935 F.3d at 1278–79 (emphasis in original). "[T]he line between forceful negotiation and improper coercion is not always clear." Navarro, 563 B.R. at 143 (citation omitted). "An action is considered coercive when it is 'tantamount to a threat' . . . or places the debtor 'between a rock and a hard place.'" Id. "[C]ourts consider the 'immediateness' of the threatened action and the context in which this action took place." Id.

### b. Application to the Allegations

It is undisputed that Plaintiff continued to reside in the Tradd Property as his residence and that a lien serviced by FCI remained on the property and was ultimately foreclosed under a District Court Order. It is also undisputed that FCI was a mortgage servicer and sending mortgage statements is in the ordinary course of its business. So the remaining question is whether the mortgage statements were sent to obtain payment in lieu of exercising in rem remedies.

9

Plaintiff alleges FCI attempted to collect discharged and/or time-barred debts from Plaintiff by sending him monthly statements that were labeled "Delinquency Notice." FCI contends it sent Plaintiff "complete monthly mortgage statements." Neither is correct, as the copies of each statement attached to both parties' pleadings show it was labeled as a "Payment Statement." However, the characterization of the statements is not dispositive. The Court will instead focus on the substance of the statements.

FCI argues the statements do not violate the discharge injunction because they include a disclaimer. Plaintiff asserts there are factual issues precluding summary judgment as to whether the post-discharge monthly statements contained effective bankruptcy disclaimers.

FCI asserts it sent "complete" monthly statements, but that term is unclear. The attachments to Mr. Hanson's affidavit contain a page which matches Plaintiff's description, a page of terms including a bankruptcy disclaimer and, in many statements, a third page of terms also including a bankruptcy disclaimer. At oral argument, Plaintiff presented the statements and confirmed that all of the "Payment Statements" he received were double-sided, and the backside of each included a bankruptcy disclaimer. He also confirmed that at least eighteen of the statements also included a third sheet, labeled "Important Disclosures," that included a bankruptcy disclaimer. Plaintiff's argument is that the disclaimers on the backside or on a separate sheet accompanying a Payment Statement showing amounts due are not sufficient to protect the consumer under section 524(j), and that this is a factual issue precluding summary judgment.

In In re Kirby, 599 B.R. 427 (B.A.P. 1st Cir. 2019), the debtor asserted a similar argument. The Bankruptcy Appellate Panel found that the alleged "factual dispute" was not a question of material fact "but merely legal argument[] in support of [the debtor's] contention that the communications were coercive and harassing." Id. at 442; see also id. at 442 n.19 ("The alleged

10

factual dispute as to whether the bankruptcy disclaimers were 'prominent' did not give rise to an issue of 'material' fact—it did not 'change the outcome of the suit.'"). The court noted that the underlying factual record—the content of the communications and to whom and when they were sent—were not in dispute. Further, whether the debtor was confused and upset by the communications was not the question. Id. at 442. The question was whether, under the objective standard, the record supported a finding the discharge injunction was violated. The court concluded the debtor's so-called "factual disputes" did not present a trial-worthy issue. Id.

While Plaintiff contends he did not receive "Complete Monthly Mortgage Statements" from FCI, and that FCI instead sent him a "Payment Statement" that had no disclaimer (Docs. Nos. 91 & 92), he does not contest that he received double-sided Payment Statements and that the backside of each Payment Statement included a bankruptcy disclaimer.

### c. **Whether FCI Violated the Discharge Injunction**

Plaintiff contends the boilerplate disclaimer language like that in the FCI statements does not overcome the coercive effect of language that purports to enforce personal liability against him, particularly when the disclaimer is on the back of the demand for payment or on a separate page. He also objects to the hypothetical nature of it, and contends disclaimers must be tailored to the specific debtor. Finally, he argues the payment statements are a discharge violation when considered with other letters sent at the same time. The Court disagrees on all counts.

"Although not entirely dispositive, inclusion of 'clear and prominent disclaimers' informing discharged debtors that the creditor is 'solely seeking payment as a substitute for pursuing [its] *in rem* rights' is an effective way for the creditor to identify the purposes of the communications and to ensure that violation of the discharge injunction does not occur." Cantrell, 605 B.R. at 856 (footnote omitted); see also Best, 540 B.R. at 11 (existence of disclaimer language,

11

however, will not insulate an otherwise improper demand for payment). Accordingly, the existence of disclaimer language in post-discharge communications with debtors is often a significant factor in determining whether the communications violate the discharge injunction. Thomas, 554 B.R. at 520-21. The inclusion of an "amount due," "due date," and statements about an escrow balance "does not diminish the effect of [a] prominent, clear, and broadly worded disclaimer." Roth, 935 F.3d at 1276.

The use of a pro forma bankruptcy disclaimer, however, is not a "get out of jail free" card that can absolve a creditor of liability for a pattern of conduct that is inconsistent with the terms of the disclaimer itself. Todt v. Ocwen Loan Serv., LLC (In re Todt), 567 B.R. 667, 679 (Bankr. D.N.H. 2017) (finding generic bankruptcy disclaimer on back of twenty-one statements sent to debtor post-discharge did not insulate the creditor from liability); Lemieux v. America's Serv. Co. (In re Lemieux), 520 B.R. 361, 367-68 (Bankr. D. Mass. 2014) (coercive effect of correspondence that consisted of more than twelve pages regarding insurance coverage that contained multiple demands for action and payment could not be overcome by a single bankruptcy disclaimer in reduced type on page three). Numerous courts have held that a statement violates the discharge injunction when it contains both payment demands and an inconspicuous disclaimer stating that as to discharged debtors, the entire statement is being sent for an informational purpose. In re Biery, 543 B.R. 267, 290 (Bankr. E.D. Ky. 2015); see, e.g., Hernandez v. Caliber Home Loans, Inc. (In re Hernandez), 2014 WL 5794840, at *3 (Bankr. S.D. Tex. Nov. 6, 2014) (holding that a statement that demanded payment, but contained a second-page disclaimer amounting to "two inconspicuous sentences in fine print hidden within paragraphs of text," violated the discharge); In re Tucker, 2013 WL 3155419, at *3 (Bankr. S.D. Ga. June 20, 2013) (holding that a statement containing a conditional disclaimer to the effect that if the recipient was in bankruptcy, the

statement was for informational purposes, but that referred to payments as due throughout, violated the discharge).

In Mele, the court in this district noted that the cumulative effect of relentless communications from a mortgage creditor can result in the violation of the discharge injunction notwithstanding the presence of a disclaimer. 486 B.R. at 556. But it found no such violation. The debtor in Mele made the same argument Plaintiff makes here—that when a document includes words of collection or demand for payment, a disclaimer in the same document can cause confusion. Id. at 557-58. The court, therefore, considered the collective effect of the documents and determined that, collectively, the documents were generally informational in nature and were not an attempt to collect on personal liability. Id. at 558; see also Roth, 35 F.3d at 1276; Navarro, 563 B.R at 149 (acknowledging that "disclaimer language may not be used to shield an improper demand for payment *should there be one*" but finding no such improper demand and finding that the cumulative effect of the lender's correspondence did not constitute an attempt to collect a debt) (emphasis added). The other contacts were "entirely consistent with the exercise of *in rem* rights and not with demand for payment." 486 B.R. at 558. The court concluded that while the debtor did suffer distress, its cause was the debtor's "misunderstanding of the effect of her discharge and its impact on the obligation secured by her home, and not due to any violation of the discharge injunction[.]" Id.; see also In re Kirby, 599 B.R. 427 (B.A.P. 1st Cir. 2019) (right to cure notice mailed post-discharge was an act to enforce mortgagee's in rem rights in Chapter 7 debtors' property, rather than an attempt to collect a debt as personal liability of debtors, and did not violate the discharge injunction, especially given that it contained an unambiguous bankruptcy disclaimer); In re Tucker, 516 B.R. 340, 346–47 (Bankr. W.D. Va. 2014) (holding that a statement containing a clear disclaimer in capital letters did not violate the discharge, and distinguishing that

13

statement from statements in other cases that contained less prominently placed disclaimers); Jones v. BAC Home Loans Servicing, LP (In re Jones), 2009 WL 5842122, at *3 (Bankr. S.D. Ind. Nov. 25, 2009) (holding that a statement fell "squarely within the 524(j)(3) exception" because it contained a clear disclaimer).

FCI sent Plaintiff monthly Payment Statements that included an amount due, explanation of payment due, and box labeled "Delinquency Notice" stating: "You are late on your monthly mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. . . . You must pay this amount to keep your loan current." The statements from FCI also had a detachable payment portion stating, **"PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR RECORDS."** The backside of each statement, however, included a disclaimer, in bold, capitalized text, stating:

> **IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The question is the legal effect of these statements.

The Court concludes the collective effect of FCI's monthly statements was generally informational in nature and the statements were entirely consistent with the exercise of FCI's *in rem* rights, not with a demand for payment. Plaintiff continued to reside in the property. As case law makes clear, communication of information regarding a residential mortgage debt is not an "act to collect" a debt if there is a valid purpose in communicating the information and if the communication itself is informational only. Further, section 524(j) specifically provides that a

14

creditor that retains a security interest in real property that is the principal residence of the debtor may send communications to a discharged debtor if sent in the ordinary course of business between the creditor and the debtor and if they are limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien. 11 U.S.C. § 524(j). There is no dispute the statements were all double-sided and that the backside of each statement included a disclaimer. The Court holds the disclaimer is sufficient to bar a discharge violation claim.

Plaintiff contends that the hypothetical nature of the disclaimers negates their effect. He argues that although FCI knew he had filed bankruptcy and received a discharge, the disclaimer included in the monthly statements spoke of bankruptcy only as a hypothetical possibility: "*if* you or your account are subject to pending bankruptcy proceedings, *or if* you received a bankruptcy discharge on this debt." (Emphasis added.) Courts have found a disclaimer that makes allowance for the fact that the debtor may be in bankruptcy is sufficient in the absence of multiple coercive communications. See In re Lett, 2021 WL 4256375 (Bankr. N.D. Ga. Sept. 8, 2021); Roth, 35 F.3d at 1276; but see In re Marino, 577 B.R. 772, 784 (B.A.P. 9th Cir. 2017), aff'd in part, appeal dismissed in part, 949 F.3d 482 (9th Cir. 2020) (coercive effect of multiple communications seeking to collect a debt as a personal liability could not be overcome by a hypothetical or generic bankruptcy disclaimer). Here, the scope and breadth of the correspondence from FCI were not so great as to be coercive, as discussed further below. The Court concludes, as the court in Lett did, that the hypothetical nature of the disclaimers at issue here does not mean there is a discharge violation.

It is important to note that the only communications at issue here are the FCI monthly statements. The Court has already considered various letters sent to Plaintiff from FCI and

15

determined that they did not violate the discharge injunction. Plaintiff references communication he received dated May 15, 2018, stating FCI was the new servicing agent for PTI20 authorized to process and collect scheduled payments. The Court has already addressed this letter in its Order on the Engle Defendants Motion to Dismiss (Doc. No. 37), and determined the objective effect of the May 15 welcome letter was not to pressure Plaintiff to repay a discharged debt.

In opposing summary judgment, Plaintiff also refences a communication dated April 26, 2018 entitled "Notice of Assignment, Sale[,] or Transfer of Servicing Rights." The letter is attached to Plaintiff's affidavit in opposition to the Motion (Doc. No. 92). Any claim related to this April 26, 2018 communication was never pled. "A plaintiff may not amend [the] complaint through argument in a brief opposing summary judgment." Lightfoot v. Henry Cty. Sch. Dist., 771 F.3d 764, 779 (11th Cir. 2014) (citation omitted). This principle applies even if the allegations at issue are characterized as "additional evidence" rather than "additional claims." Mitchell v. Pilgrim's Pride Corp., 817 F. App'x 701, 708 (11th Cir. 2020) (citing Lightfoot, 771 F.3d at 778-79 (concluding that the district court did not err in declining to consider a "new factual basis" raised for the first time in the plaintiff's response in opposition to summary judgment)); see also Desparois v. Perrysburg Exempted Vill. Sch. Dist., 455 F. App'x 659, 662 (6th Cir. 2012) ("A plaintiff may not expand his claims to assert new theories in response to summary judgment.").

Even if the Court were to consider the April 26, 2018 communication, however, the letter does not raise a genuine issue of material fact as to whether FCI violated the discharge injunction. The April 26, 2018 letter notified Plaintiff that the servicer was changing from PTI20 to FCI. As the Court has previously explained, Plaintiff's discharge did not affect the Tradd HELOC—it survived the bankruptcy case. A creditor who holds a claim secured by the debtor's principal residence may continue to communicate with a discharged debtor, as long as the creditor's acts are

16

in the ordinary course of business and limited to seeking payments in lieu of in rem relief (i.e. foreclosure). The April 26 letter is the type of letter a creditor would send a debtor regarding servicing of the underlying loan. The letter was informational, and the objective effect of the April 26 letter was not to pressure Plaintiff to repay a discharged debt, but simply to notify him of the change in servicer.

### V.  CONCLUSION

Plaintiff asserts the disclaimer in the FCI payment statements is insufficient to protect the communications. But the communications were not sent or written to pressure Plaintiff to pay on the debt as a personal obligation, but instead to allow Plaintiff the opportunity to protect the home in which he lived. The hypothetical nature of the disclosure does not change the Court's conclusion. Finally, Plaintiff has not pled or presented any evidence to show FCI was coercing him. Notification of transfers of the debt, or transfer of servicers, and the like are informational communications. The Court therefore concludes on the undisputed facts that FCI is entitled to judgment as a matter of law that the FCI monthly statements did not violate the discharge injunction. Accordingly,

**IT IS ORDERED** that FCI's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment as to FCI is **DENIED**.

**END OF DOCUMENT**

**Distribution List**

Emmanuel O. Ohai
863 Flat Shoals Rd. SE
C #155
Conyers, GA 30094

Larry W. Johnson
138 Hammond Drive, Suite B
Atlanta, GA 30328