

**IT IS ORDERED as set forth below:**

**Date: April 9, 2024**

_Wendy L. Hagenau_
_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-65475-WLH |
| EMMANUEL OHAI, | CHAPTER 7 |
|       Debtor. | |
| EMMANUEL OHAI, | ADVERSARY PROCEEDING<br>NO. 23-5041-WLH |
|       Plaintiff, | |
| v. | |
| DELTA COMMUNITY CREDIT UNION,<br>PNC BANK NATIONAL ASSOCIATION,<br>INC., DEAN ENGLE & PARK TREE<br>INVESTMENTS, LLC, PARK TREE<br>INVESTMENTS 20, LLC, FCI LENDER<br>SERVICES, INC., DANIEL I. SINGER &<br>SINGER LAW GROUP, PHILLIP L.<br>JAUREGUI D/B/A JAUREGUI & LINDSAY<br>LLC, MICHAEL W. LINDSEY D/B/A,<br>JAUREGUI & LINDSEY, LLC, MICROBILT<br>CORPORATION, | |
|       Defendants. | |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
## AS TO PARK TREE INVESTMENTS, LLC AND PARK TREE INVESTMENTS 20, LLC

1

THIS MATTER is before the Court on cross Motions for Summary Judgment filed by Plaintiff (Docs. Nos. 100—103) and Park Tree Investments, LLC ("PTI") (Docs. Nos. 116, 117, 119, & 120), and the parties' responses thereto (Docs. Nos. 146, 151, 152, & 157), as well as cross Motions for Summary Judgment filed by Plaintiff (Docs. Nos. 131—134) and Park Tree Investments 20, LLC ("PTI20") (Docs. Nos. 116, 117, 119, & 120), and the parties' responses thereto (Docs. Nos. 146, 149, 151, & 157). The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the claim of violating the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O). See In re Golden, 630 B.R. 896, 920 (Bankr. E.D.N.Y. 2021) (it is axiomatic that this Court has subject matter jurisdiction to consider such core matters); In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009).

## I.      SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable to contested matters by Federal Rules of Bankruptcy Procedure 7056 and 9014. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c) ; Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The

party moving for summary judgment has "the initial responsibility of informing the . . . court of [the] basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323). What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

When the nonmoving party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material negating the opponent's claim" (cites omitted) in order to discharge this "initial responsibility".

> Instead, the moving party simply may "show - that is, point out to the . . . court - that there is an absence of evidence to support the nonmoving party's case." (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Id. at 1437–38 (citing Celotex, 477 U.S. at 323–31).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

## II. UNDISPUTED FACTS

The facts relating to this adversary proceeding are set out in the Court's Order on the Engle Defendants Motion to Dismiss (Doc. No. 37) and incorporated herein. As more fully explained in

that order, Plaintiff and his now ex-wife purchased their primary residence at 2715 Tradd Court, Snellville, Georgia (the "Tradd Property") in April 2006 and executed a note and security deed in favor of Delta Community Credit Union ("Delta") (the "Tradd Mortgage Loan"). In March 2008, Plaintiff and his now ex-wife obtained a home equity loan in the amount of $46,000 from Delta, secured by a second security deed (the "Tradd HELOC"). Plaintiff and his now ex-wife defaulted on the Tradd HELOC in 2010.

On June 20, 2012, Plaintiff and his now ex-wife filed a petition under Chapter 7 of the Bankruptcy Code.  Plaintiff and his ex-wife received a discharge on October 5, 2012 (Bankr. Doc. No. 14) and the bankruptcy case was closed.

Plaintiff continued to live in the Tradd Property. The Tradd HELOC was sold to Park Tree Investments 20, LLC ("PTI20") by June 22, 2017 when Plaintiff received a Borrower Welcome Letter explaining that PTI20 was the holder of the HELOC note,[1] and that PTI was the servicing agent. The letter included a paragraph bolded and in all caps:

**<u>IMPORTANT BANKRUPTCY INFORMATION</u>**

**IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATEMPT TO COLLECT A DEBT.**

Plaintiff responded with a cease-and-desist letter, which PTI20 acknowledged by letter dated July 12, 2017 stating Plaintiff's file would be noted and he would not receive collection communications.

PTI was in the mortgage servicing business and sent mortgage statements in the ordinary

---

[1] Plaintiff contends PTI20 was not formed until August 2, 2017.

course of its business. PTI, as servicer for PTI20, sent Plaintiff monthly mortgage statements dated July 31, 2017; August 31, 2017; September 30, 2017; and October 31, 2017 (the "Monthly Statements"). The Monthly Statements include an amount due and chart listing the current payment due. The Monthly Statements include a section titled "**Delinquency Notice**" that states, "**You are late on your loan payments.** Failure to bring your loan current may result in fees and legal action. As of [7/31/17], you are [2,117] days delinquent on your loan."[2] The Monthly Statements included a payment coupon with instructions to "Cut here and remit this portion with your payment[,]" followed by a block stating the amount due and directions to "Make check Payable to Park Tree Investments 20[.]" The Monthly Statements did not include a disclaimer.

PTI or PTI20 requested Plaintiff's credit report on several occasions from MicroBilt Corporation.[3] The undisputed fact is that requests were made on May 30, 2017 and January 28, 2019. The credit reports produced reflected Plaintiff's bankruptcy discharge.

PTI transferred servicing of the Tradd HELOC in May 2018 to another loan servicer, FCI Lender Services, Inc. ("FCI"). FCI, on behalf of PTI20, sent Plaintiff monthly mortgage statements from March 14, 2019 through March 30, 2021. Each included a single-sided paper identifying Plaintiff's name and address and a second double-sided sheet of paper. One side was labeled "Payment Statement," and included an amount due, explanation of payment due, and box labeled "Delinquency Notice" that stated: "You are late on your monthly mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of [the date of the statement] you are [number] days delinquent on your mortgage loan. . . . You must pay this

---

[2] The dates varied with each statement.

[3] In its response to Plaintiff's Motion for Summary Judgment, PTI and PTI20 state "one of the Park Trees" requested two credit reports, but since "Park Trees" is defined in the pleadings as both PTI and PTI20 it is not clear which entity made the request(s) and on what authority.  (Doc. No. 119, p. 1-2; Doc. No. 147, p.2).  Plaintiff contends PTI20 was not formed until August 2, 2017 so questions its authority to request reports prior to that date.

amount to keep your loan current." The statements from FCI also had a detachable payment portion

stating, **"PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT,**

**RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR**

**RECORDS."** The backside of each statement included a disclaimer, in bold, capitalized text,

stating:

> **IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Starting with the October 30, 2019 statement, FCI included a third piece of paper with the next

eighteen statements labeled "Important Disclosures," with a bankruptcy disclaimer in bold,

capitalized text identical to the disclaimer on the back of the Payment Statement.

The Tradd Property was ultimately foreclosed on April 6, 2021 after entry of an order of

the District Court (1:20-cv-02220-SCJ-JEM Doc. No. 135). On March 29, 2023, Plaintiff filed the

complaint against PTI and PTI20, as well as his former mortgage holders, certain debt collectors,

and a consumer reporting agency. PTI and PTI20, together with FCI, Dean Engle, Phillip L.

Jauregui d/b/a Jauregui & Lindsey and Michael W. Lindsey d/b/a Jauregui & Lindsey, LLC, filed

a Motion to Dismiss (Doc. No. 6). The Court granted in part and denied in part the Motion to

Dismiss (Doc. No. 37). The Court found the complaint failed to state a plausible claim for relief

as to Plaintiff's claim that PTI or PTI20 violated the discharge injunction by sending Plaintiff the

Borrower Welcome Letter dated June 22, 2017, and such claim was dismissed. The Court found,

however, that the complaint stated a plausible claim that PTI violated the discharge injunction by

sending Plaintiff the Monthly Statements and by requesting Plaintiff's credit report. PTI (Doc. No.

48) answered the Complaint on August 28, 2023.

As to PTI20, the Court explained a mortgage creditor and its loan servicer are jointly and severally liable for a discharge-injunction violation. In re Lewis, 570 B.R. 195 (Bankr. E.D.N.C. 2017). Thus, a creditor whose claim is secured by the debtor's principal residence is liable along with its loan servicer for sending statements in an attempt to collect from debtors. Id.; see also Todt, 567 B.R. at 683–84 (creditor bank and servicer held jointly and severally liable based on servicer's violations of the discharge injunction). The Court found the complaint stated a plausible claim that PTI20 violated the discharge injunction when PTI and FCI sent monthly mortgage statements and by PTI or PTI20 requesting Plaintiff's credit report. PTI20 (Doc. No. 53) answered the Complaint on September 12, 2023. Subsequently, the Court granted summary judgment to FCI, concluding it did not violate the discharge injunction (Doc. No. 188).

### III.  DISPUTED FACTS

Additional relevant facts are disputed by the parties. Plaintiff contends an additional credit request was made on February 3, 2020, which PTI and PTI20 have not acknowledged. Plaintiff alleges the requests resulted in "hard" inquiries on his credit report. He contends he objected to the requests. He and MicroBilt state that MicroBilt requested verification from PTI as to its authority to make the hard requests, but PTI did not respond. PTI and PTI20 deny this allegation. PTI and PTI20 contend they never reported negative information to a credit reporting agency, but Plaintiff disputes the statement, arguing that the "hard" inquiry was misleading. Finally, PTI and PTI20 allege Plaintiff previously agreed to settle the matter but did not perform. Plaintiff denies the statement.

## IV. PROCEDURAL POSTURE

Plaintiff filed a Motion for Summary Judgment against PTI on January 22, 2024, and a Motion for Summary Judgment against PTI20 on January 31, 2024. Plaintiff contends there is no dispute of material fact the Monthly Statements PTI sent Plaintiff while servicing the PTI20 debt violated the discharge injunction. He states the statements threatened action against Plaintiff and did not include a clear or prominent disclaimer. Plaintiff contends PTI or PTI20 requested Plaintiff's credit report on May 30, 2017; January 28, 2019; and February 2020 so that they could collect a discharged debt, which also violated the discharge injunction.

PTI and PTI20 filed a Cross Motion for Summary Judgment (Doc. No. 116) on January 30, 2024. They contend the PTI monthly mortgage statements were sent as part of regular mortgage servicing and did not violate the discharge injunction. PTI and PTI20 acknowledge that either PTI or PTI20 (they do not specify which entity) requested Plaintiff's credit report on two occasions, but they contend that the credit inquiries were made as part of an ongoing mortgage relationship. PTI20 contends the monthly statements sent by FCI did not violate the discharge injunction.

## V. ANALYSIS

### a. <u>Discharge Injunction</u>

Section 524 governs a debtor's discharge in bankruptcy. It provides that a bankruptcy discharge, among other things:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). "The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as: letters, phone calls, threats of criminal proceedings or other adverse actions

brought about with the purpose of debt repayment." <u>McConnie Navarro v. Banco Pupular De Puerto Rico (In re McConnie Navarro)</u>, 563 B.R. 127, 141 (Bankr. D.P.R. 2017) (citation omitted).

Pursuant to section 105, a bankruptcy court may enforce the discharge injunction and "order damages if the circumstances so require." <u>Id.</u> Sanctions for violations of the discharge injunction are in the nature of civil contempt. <u>Id.</u> "Sanctions … may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." <u>In re McLean</u>, 794 F.3d 1313, 1323 (11th Cir 2015)(citing <u>F.T.C. v. Leshin</u>, 719 F.3d 1227, 1231 (11th Cir 2013)). To determine if sanctions are appropriate, the Court must first "determine whether a communication is a prohibited debt collection under section 524, by looking to 'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.'" <u>In re Roth</u>, 935 F.3d 1270, 1276 (11th Cir. 2019) (citing <u>In re McLean</u>, 794 F.3d 1313, 1322 (11th Cir. 2015)). If so, the court then evaluates whether that violation of the discharge injunction is sanctionable under section 105, by determining if "'there is *no fair ground of doubt* as to whether the order barred the creditor's conduct.'" <u>Roth</u>, 35 F.3d at 1276 (citing <u>Taggart v. Lorenzen</u>, 139 S. Ct. 1795, 1799 (2019)). If the act is a discharge violation, the Supreme Court has held that a bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." <u>Taggart</u>, 139 S. Ct. at 1801. To meet this standard, the party that violated the discharge injunction must have acted with knowledge of it. <u>In re Cowan</u>, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020); <u>see also</u> <u>In re Milani</u>, 2020 WL 5551990, at *5 (Bankr. N.D. Ga. Sept. 16, 2020) ("In this regard, a subjective good faith belief that the action taken does not violate the discharge injunction is not sufficient to avoid sanctions if such a belief is not objectively reasonable.").

The discharge injunction, however, has limits. A Chapter 7 discharge releases the debtor from all debts that arose before the petition date, but it only extinguishes "personal liability of the debtor." 11 U.S.C. §§ 727(b), 524(a)(2). The discharge does not affect a secured creditor's interest in real property, and a creditor's right to foreclose on a mortgage survives the bankruptcy. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); see also Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy"); Bentley v. OneMain Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) ("The concept that a lien 'rides through' bankruptcy is axiomatic."). "[A]fter the automatic stay terminates as to the property, a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." In re Best, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (citation omitted).

Section 524 does not bar all contact with a discharged debtor. Indeed, section 524(j) provides an exception to the discharge injunction for creditors who hold claims secured by the debtor's principal residence as long as the creditor's acts are in the ordinary course of business between the debtor and the creditor and limited to seeking payments in lieu of in rem relief (i.e. foreclosure). This section provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). All three requirements must be met for the exception to apply. In re Lemieux, 520 B.R. 361, 368 (Bankr. D. Mass. 2014). "The law thus attempts to create a safe harbor for a

10

mortgage servicer to continue to send advices of and payment books to the debtor even if the personal debt has been discharged." Navarro, 563 B.R. at 142 (citation omitted).

As section 524(j) makes clear, section 524 does not bar a creditor from contacting a debtor who received a discharge in bankruptcy. "Communication of information regarding a residential mortgage debt is not an 'act to collect' a debt if there is a valid purpose in communicating the information and if the communication itself is informational only[.]" Thomas v. Seterus Inc. (In re Thomas), 554 B.R. 512, 520 (Bankr. M.D. Ala. 2016). "[S]ome post discharge communication is necessary and should be encouraged," especially in a case in which a debtor is intending to keep his home. Mele v. Bank of Am. Home Loans (In re Mele), 486 B.R. 546, 556 (Bankr. N.D. Ga. 2013); see also In re Schatz, 452 B.R. 544, 549-50 (Bankr. M.D. Pa 2011) (explaining that secured creditors should be encouraged to send informational statements to a discharged debtor who intends to keep the secured property).

"[T]he distinction between communications that improperly seek to impose personal liability on a debtor and those that merely seek periodic payments in lieu of foreclosure is dependent, to a great extent, on the content of the correspondence." In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019). The court must determine "whether the *objective* effect of [a communication] is to pressure a debtor to repay a discharged debt". Roth, 935 F.3d at 1278–79 (emphasis in original). "[T]he line between forceful negotiation and improper coercion is not always clear." Navarro, 563 B.R. at 143 (citation omitted). "An action is considered coercive when it is 'tantamount to a threat' . . . or places the debtor 'between a rock and a hard place.'" Id. "[C]ourts consider the 'immediateness' of the threatened action and the context in which this action took place." Id.

b.  **Application to the Allegations**

i.  **PTI Monthly Statements**

Plaintiff alleges PTI and PTI20 attempted to collect a discharged debt from him when PTI sent him the Monthly Statements. PTI and PTI20 contend the Monthly Statements were generally informational in nature and entirely consistent with the exercise of PTI and PTI20's in rem rights and, therefore, did not violate the discharge injunction.

It is undisputed that Plaintiff continued to reside in the Tradd Property as his residence and that a lien held by PTI20 and serviced by PTI remained on the property and was ultimately foreclosed after a District Court order. It is also undisputed that PTI was a mortgage servicer and sending mortgage statements is in the ordinary course of its business. So the remaining question is whether the mortgage statements were sent to obtain payment in lieu of exercising in rem remedies.

"Although not entirely dispositive, inclusion of 'clear and prominent disclaimers' informing discharged debtors that the creditor is 'solely seeking payment as a substitute for pursuing [its] *in rem* rights' is an effective way for the creditor to identify the purposes of the communications and to ensure that violation of the discharge injunction does not occur." Cantrell, 605 B.R. at 856 (footnote omitted); see also Best, 540 B.R. at 11 (existence of disclaimer language, however, will not insulate an otherwise improper demand for payment). Accordingly, the existence of disclaimer language in post-discharge communications with debtors is often a significant factor in determining whether the communications violate the discharge injunction. Thomas, 554 B.R. at 520-21. The inclusion of an "amount due," "due date," and statements about an escrow balance "does not diminish the effect of [a] prominent, clear, and broadly worded disclaimer." Roth, 935 F.3d at 1276.

12

But the lack of a disclaimer is not determinative. Cases have held that sending periodic billing statements without disclaimers post-discharge is not, per se, a violation of the discharge injunction. In re Biery, 543 B.R. 267, 285–86 (Bankr. E.D. Ky. 2015) (citing cases); see also Whitaker v. Bank of Am. (In re Whitaker), 2013 WL 2467932, at *8–9 (Bankr. E.D. Tenn. June 7, 2013) (holding that section 524(j) does not require disclaimers); In re Kirby, 599 B.R. 427, 444 (B.A.P. 1st Cir. 2019); In re Gill, 529 B.R. 31, 41 (Bankr. W.D.N.Y. 2015); cf. Connor v. Countrywide Bank, N.A. (In re Connor), 366 B.R. 133, 137–38 (Bankr. D. Haw. 2007) (holding that disclaimer-free billing statements do not violate the automatic stay if sent to a debtor who intends to ride through).

PTI sent Plaintiff four Monthly Statements (after Plaintiff sent a cease-and-desist letter) that included an amount due, explanation of payment due, and box labeled "**Delinquency Notice**" stating, "**You are late on your loan payments.** Failure to bring your loan current may result in fees and legal action. As of [the date], you are [2,117] days delinquent on your loan." The Monthly Statements included a payment coupon with instructions to "Cut here and remit this portion with your payment[,]" followed by a block stating the amount due and directions to "Make check Payable to Park Tree Investments 20[.]" The Monthly Statements did not include any references to either bankruptcy or discharge on its face. None of the statements include a bankruptcy disclaimer. PTI points to the disclaimer in the Borrower Welcome Letter as support for its position.

The Court concludes there are disputed issues of material fact as to whether the collective effect of the Monthly Statements were informational in nature, particularly after Plaintiff sent a cease-and-desist letter. Plaintiff continued to reside in the property. As case law makes clear, communication of information regarding a residential mortgage debt is not an "act to collect" a

debt if there is a valid purpose in communicating the information and if the communication itself is informational only. But the Monthly Statements requested payment and contained no disclaimers. Sending statements without a disclaimer is not conclusively a discharge violation. Rather, the Monthly Statements must be viewed together with the other communications and conduct, including the Borrower Welcome Letter, the cease-and-desist letter, and credit report requests discussed below, to determine whether the acts, individually or combined, objectively pressured Plaintiff to pay the discharged debt. Moreover, the disputed facts leave open the question of whether there could be a fair ground of doubt that the combination of activities violated the discharge injunction. Accordingly, summary judgment as to PTI and PTI20 is not appropriate.

ii.  **Credit Reports**

Next, Plaintiff contends that there is no dispute of material fact that PTI and PTI20 violated the discharge injunction by requesting Plaintiff's credit report on May 30, 2017, January 28, 2019, and February 3, 2020, which resulted in "hard" inquiries on his report. Plaintiff contends PTI and PTI20 did not have a permissible purpose in accessing his credit report because the debt on the account was discharged in bankruptcy. PTI and PTI20 acknowledge that either PTI or PTI20 requested Plaintiff's credit report on May 30, 2017 and January 28, 2019, but they contend that the credit inquiries were made as part of an ongoing mortgage relationship. PTI and PTI20's brief refers to PTI and PTI20 collectively as "Park Trees" and says "[o]ne of the Park Trees requested" credit inquiries. (Doc. No. 119 at 2.) PTI and PTI20 do not distinguish between the acts of PTI and those of PTI20. Their rights to the credit reports differ. PTI20 held the lien, but Plaintiff alleges it was not formed until after the 2017 inquiry. PTI was a servicer for PTI20, but only from May 2017 to May 2018. When Plaintiff challenged PTI's right to place a "hard" inquiry[4] on his credit report,

---

[4] When a creditor requests a credit report, the inquiry may be considered either "soft" or "hard." An inquiry is "soft" when it is made as part of an ongoing relationship between the inquirer and the consumer, relates to employment

he alleges MicroBilt asked PTI to verify its authority to pull the report. PTI allegedly did not respond. So a question exists as to how many reports were accessed, who accessed the reports, and their authority to do so.

Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." Equifax v. Fed. Trade Comm'n., 678 F.2d 1047, 1048 (11th Cir. 1982). In order to protect consumers from inappropriate pulls on their credit information, the FCRA outlines several instances in which permissible consumer reports may be made. 15 U.S.C. § 1681(b)(a). The list of permissible purposes for consumer reports include using "the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer" and "as a potential investor or servicer, . . . in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation[.]" 15 U.S.C.A. § 1681(b).

While a discharged debtor is not personally liable for a discharged mortgage loan, a creditor with *in rem* rights has a collectable debt. That is because a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); see also Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy"); Bentley v. OneMain Fin. Grp. (In re Bentley), 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) ("The concept that a lien 'rides through' bankruptcy is axiomatic."). Cases have held that an *in rem* claim for the amount due under a discharged mortgage constitutes an enforceable debt and, thus, a

---

screening, or will otherwise leave the consumer's credit score unaffected. Hines v. Equifax Info. Servs., LLC, 2022 WL 2841909, at *2 (E.D.N.Y. July 16, 2022). Conversely, an inquiry is "hard" when it is associated with a consumer-initiated application for credit and may therefore impact the consumer's credit score. Id.

legitimate business need under the FCRA. <u>Raciti v. Rushmore Loan Mgmt. Servs., LLC</u>, 412 F. Supp. 3d 462, 470–71 (D.N.J. 2019).

Case law also explains that a creditor may pull a discharged debtor's credit without violating the discharge injunction. For example, in <u>In re Ho</u>, 624 B.R. 748, 754 (Bankr. E.D.N.Y. 2021), the court found that the creditor's credit pulls were in connection with the maintenance of existing accounts and applications for loan modifications and, accordingly, the creditor had an "objectively reasonably basis" for thinking that those pulls "might be lawful." <u>Id.</u> at 754 (citing <u>Taggart</u>, 139 S. Ct. at 1799). In <u>Ho</u>, the debtor also argued that the creditor impermissibly made hard inquiries into his credit status. The court found that the creditor's conduct reasonably appeared to be within the proper scope of the FCRA, and, in particular, within the permissible purpose requirements of FCRA § 1681b(a)(3)(A) in performing a review of the mortgage account it maintained on the debtor's behalf. It went on to conclude that "even if there is a question as to the appropriateness of [the creditor's] conduct for FCRA purposes, there exists a 'fair ground of doubt' that creditor's pulling of the report for an existing account was a violation of the discharge order, since there is no plausible allegation before the Court that the credit inquiry was made for the purpose of collecting a discharged in personam liability." 624 B.R. at 755; <u>see also</u> <u>In re Berry</u>, 2021 WL 2010777, at *6 (Bankr. W.D. Tenn. Mar. 9, 2021) (finding debtor gave prior authorization, by virtue of her signing HELOC agreement, to any holder of that interest to make credit inquiries and debtor failed to show that there was no fair ground of doubt as to whether the discharge injunction barred credit pull).

Similarly, in <u>Raciti v. Rushmore Loan Mgmt. Servs., LLC</u>, 412 F. Supp. 3d 462 (D.N.J. 2019), the court noted that although the debtors were not personally liable for the discharged mortgage loan, the creditor's *in rem* right to the loan is a collectable debt and established a

16

legitimate business need for the credit pull under the FCRA, 15 U.S.C. § 1681(b). The court noted

that the conduct—i.e. the credit pull—must be "objectively unreasonable." Id. at 471 n.4 (citing

Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 70 (2007)). "So long as the conduct adopted by the

company 'could reasonably have found support in the courts,' no willful violation exists." Id. The

creditor retained *in rem* rights to the loan post-discharge, and there is ample case law holding that

pulling a credit report in such circumstances does not violate the FCRA. The court concluded the

creditor's conduct was not "objectively unreasonable." Id.

Here, the facts are disputed. PTI20 was the owner of the note, and a potential investor in

the note before that, and its affiliate (PTI) was the servicer for a limited period of time from 2017

to May 2018. On May 30, 2017, either PTI or PTI20 (it is not clear which entity) requested a credit

report from MicroBilt. MicroBilt received additional requests for Plaintiff's credit reports on

January 28, 2019 and February 3, 2020. PTI and PTI20 have acknowledged "one of the Park Trees"

accessed Plaintiff's credit, but it is not evident whether it was PTI or PTI20. The Court notes that

PTI transferred its servicing rights in May 2018, so it was no longer a servicer entitled to Plaintiff's

credit report in 2019 and 2020. But PTI allegedly did not verify to MicroBilt its authority to make

the "hard" requests. So a question exists as to who accessed Plaintiff's credit reports, when the

access occurred, and whether it had authority to do so. Because the Court cannot determine who

requested the credit pulls, and whether they had the requisite authority to do so, the Court cannot

say that the credit pulls were in connection with the maintenance of an existing account and that

there was an "objectively reasonably basis" for thinking that those pulls "might be lawful."

Taggart, 139 S. Ct. at 1799. PTI20 could be liable if the credit report pulls were a discharge

violation by it or PTI. Accordingly, questions of fact preclude summary judgment.

### iii.  <u>FCI Monthly Statements</u>

Plaintiff claims PTI20 is liable for the acts of FCI, as servicer for PTI's loan. The Court entered an Order on Cross Motions for Summary Judgment Filed by Plaintiff and FCI Lender Services, Inc. on April 3, 2024 in which it found the collective effect of FCI's monthly statements was generally informational in nature and the statements were entirely consistent with the exercise of FCI's *in rem* rights, not with a demand for payment (Doc. No. 188). Accordingly, the Court concluded FCI was entitled to judgment as a matter of law that the FCI monthly statements did not violate the discharge injunction. Because FCI did not violate the discharge injunction, PTI20 is likewise entitled to judgment as a matter of law on Plaintiff's claim that PTI20 violated the discharge injunction when FCI sent mortgage statements on PTI20's behalf.

### IV.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that summary judgment is **DENIED** to Plaintiff, PTI, and PTI20 on Plaintiff's claim that PTI and PTI20 violated the discharge injunction by requesting his credit reports, and a trial will be held.

**IT IS FURTHER ORDERED** that summary judgment is **DENIED** to Plaintiff, PTI, and PTI20 on Plaintiff's claim that PTI and PTI20 violated the discharge injunction by sending him mortgage statements, and a trial on this claim will be held.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** to PTI20 on Plaintiff's claim that PTI20 violated the discharge injunction when FCI sent mortgage statements on PTI20's behalf.

**IT IS FURTHER ORDERED** that summary judgment is denied as to Plaintiff's request for sanctions and damages, and a trial on damages will be held.

**IT IS FURTHER ORDERED** that Plaintiff, PTI, and PTI20 have thirty (30) days from the entry of this Order to submit a joint pre-trial order in accordance with Bankruptcy Local Rule 7016-2.

**END OF DOCUMENT**

**Distribution List**

Emmanuel O Ohai
863 Flat Shoals Rd. SE
C #155
Conyers, GA 30094

Larry W. Johnson
138 Hammond Drive, Suite B
Atlanta, GA 30328